FRED J. STANBACK, JR. v. VANITA B. STANBACK.

(Filed 15 December, 1965.)

1. **Divorce and Alimony § 22—**

In all actions for divorce, the children of the marriage become wards of the court and the court has jurisdiction over their custody, which continues even after divorce.

2. **Same—**

Order awarding custody of the children of the marriage is not final but is subject to modification upon change of condition, the controlling factor always being the welfare of the children.

3. **Same; Courts § 9—**

One Superior Court judge may not review an order of another, but while an order in a divorce action awarding the custody of the children of the marriage is subject to modification, it may be altered only upon a showing of change in the needs of the children or change in the fitness and capacity of the respective parties to care for them which warrants such modification in the interest of the children.

4. **Same—**

Some 16 days after the entry of an order awarding custody of the children of the marriage to the father, the mother made a motion for modification of the order for change of condition. At the second hearing the affidavits originally filed were again considered, together with additional affidavits supporting, respectively, the original contentions of the parties, but failing to disclose any change in their condition or the needs of the

children. *Held:* The evidence does not support the court's finding at the second hearing that there had been a change in condition in that the wife had ceased to indulge in intoxicants, and the court was without authority to modify the prior order.

APPEAL by plaintiff from *Gwyn, J.,* July, 1965 Session, ROWAN Superior Court.

On March 22, 1965, the plaintiff, Fred J. Stanback, Jr., instituted this civil action against Vanita B. Stanback for divorce from bed and board and for the exclusive custody of their children, Bradford G. Stanback, age six, and Lawrence C. Stanback, age four and one-half. On April 9, 1965, the defendant filed an answer and cross action denying the material allegations with respect to the cause for divorce and the fitness of the plaintiff and the unfitness of the defendant for the custody of the children. She demanded exclusive custody, together with alimony for herself, allowance for the support of the children, and for attorneys' fees.

On April 22, 1965, pursuant to notice and by consent of the parties, Judge Hal Hammer Walker conducted a hearing on plaintiff's motion for an order awarding to him exclusive custody of the children pending the hearing on the merits. Judge Walker considered the verified pleadings and the numerous affidavits bearing on the welfare of the children and the fitness of the respective parties for their custody.

At the conclusion of the hearing, the court, among others, made these findings:

"1. The plaintiff is a fit and proper person to have the custody of the two minor children, Bradford G. Stanback and Lawrence C. Stanback. The interest, welfare and health of the said children will best be served by awarding their custody to the plaintiff, Fred J. Stanback, Jr.

"2. The defendant, Vanita B. Stanback, has over a long period of time, commencing more than six months ago, consumed excessive amounts of alcohol and by her action and conduct has not been and is not now a proper or fit person to have the custody of her two minor children."

Judge Walker entered an order awarding the custody of the children to the plaintiff to continue until reversed or amended by the court. From the order awarding custody and requiring the plaintiff to pay alimony *pendente lite* and counsel fees, neither party appealed.

On May 8, 1965, the defendant served on the plaintiff and filed with the court this motion:

STANBACK *v.* STANBACK.

"Now comes Vanita B. Stanback, defendant, and moves the Court that the Court investigate and consider in this matter now pending before the Court the custody, control and tuition of Bradford G. Stanback and Lawrence C. Stanback, infant children of the plaintiff and defendant, and make such order with reference to the same as to the Court seems just, proper and for the best interest of the said infants of the plaintiff and the defendant and that the Court inquire into the needs, medical expenses and subsistence necessary for the maintenance of the defendant and make such order for additional allowance of alimony *pendente lite* as to the Court appears necessary and that an order be made providing for the payment by the plaintiff for additional attorney fees for the attorneys for the defendant."

On June 19, 1965, Judge Gwyn conducted a hearing at which "(T)he plaintiff and the defendant gave oral testimony. The pleadings and the affidavits (filed before Judge Walker, and many in addition thereto) were also considered." The court rendered judgment in part:

"It appearing to the Court that since the rendition of the order entered by Honorable Hal Walker, Judge of the Superior Court, the conditions have substantially and materially changed in that the defendant, Vanita B. Stanback, no longer indulges in the use of alcoholic beverages; that the earlier addiction to the use of alcohol seriously affected the defendant, leaving her in such condition from time to time to be unable to look after her children; it appearing that the defendant is now sober and is practicing sobriety and has regained her normal emotional equilibrium"; . . .

"It Is Therefore, Considered, Ordered and Adjudged that the custody of the two minor children, Bradford G. Stanback and Lawrence C. Stanback, be awarded to both parents, the plaintiff, Fred J. Stanback, Jr., and defendant, Vanita B. Stanback, to be divided equally between the two. . . ."

From the order, the plaintiff appealed.

*Kluttz and Hamlin by Clarence Kluttz; Hudson, Ferrell, Petree, Stockton, Stockton & Robinson by Norwood Robinson and Robert A. Melott for plaintiff appellant.*

*Kesler and Seay by Thomas W. Seay, Jr., Walser, Brinkley, Walser and McGirt by Walter F. Brinkley, George L. Burke, Jr., for defendant appellee.*

HIGGINS, J. . The only question now presented for decision is the validity of the order entered by Judge Gwyn on June 19, 1965, modifying Judge Walker's custody order of April 26, 1965. In divorce actions, whether for the dissolution of the marriage or from bed and board, the court in which the action is brought acquires jurisdiction over the custody of the unemancipated children of the parties. *Cox v. Cox,* 246 N.C. 528, 98 S.E. 2d 879. The jurisdiction continues even after divorce. *Reece v. Reece,* 231 N.C. 321, 56 S.E. 2d 641. The children of the marriage become the wards of the court and their welfare is the determining factor in custody proceedings. *Griffin v. Griffin,* 237 N.C. 404, 75 S.E. 2d 133. As children develop their needs change; nevertheless, the needs must be supplied by the parent whose ability to supply them may change. For these reasons orders in custody proceedings are not final.

Ordinarily, there is no appeal from one Superior Court to another. *Neighbors v. Neighbors,* 236 N.C. 531, 73 S.E. 2d 153. In matters of law or legal inference the appeal must be from the Superior Court to the Supreme Court. However, because of the court's paramount regard for the welfare of children whose parents are separated, the court, for their benefit, and upon proper showing, may modify or change a custody award. *Thomas v. Thomas,* 259 N.C. 461, 130 S.E. 2d 871; *Smith v. Smith,* 241 N.C. 307, 84 S.E. 2d 891; *Cameron v. Cameron,* 232 N.C. 686, 61 S.E. 2d 913.

In this case Judge Walker, on April 22, 1965, entered his custody order based upon the verified pleadings and the affidavits submitted by both parties. In the complaint the plaintiff alleged his fitness and the defendant's unfitness for the children's custody. The plaintiff's affidavits — 43 in number — tended to support the allegations of his complaint. The defendant's answer alleged her fitness and the plaintiff's unfitness for custody. Her affidavits — four in number — tended to support her claim. Dr. Green, her personal physician since January, 1963, and Dr. Corpening, who had treated the children, made affidavit that they had never observed any signs of alcoholism or lack of proper care for the children. Judge Walker made the findings set out in the statement of facts and entered his order awarding custody to the plaintiff. In addition to custody, the court awarded the home to the defendant and required the plaintiff to pay $100.00 a week alimony and the expenses incident to keeping up the house. The court also awarded defendant's attorneys $2,000.00.

Sixteen days subsequent to Judge Walker's order the defendant made a motion in the cause before Judge Gwyn, "(T)hat the court investigate and consider in this matter . . . the custody (of the two children) and make such order as to the court seems just and

proper and for the best interest of the infants . . ." The plaintiff, by motion, challenged the jurisdiction of Judge Gwyn upon the ground that Judge Walker had decided the controversy and that a change in condition was not alleged and had not taken place.

Judge Gwyn conducted a hearing upon the basis of the pleadings, the affidavits before Judge Walker, and in addition 18 new affidavits filed by the plaintiff and 38 filed by the defendant. Among the new affidavits introduced by the defendant were three from New York doctors specializing in psychiatry. Drs. Sullivan, Rule, and Lipton examined the defendant on May 27 in New York. Each gave as his opinion on the basis of this examination that the defendant is well able to care for her children. Dr. Sullivan stated: "On the basis of facts made known to me I find her well able to look after her children." However, affiant also stated: "No specific psychiatric diagnosis can be derived at. There is certainly no clear cut indication of paranoid psychosis."

Dr. Rule stated: "There is, of course, no history suggestive of psychotic depressive process, although she had had two full time pregnancies and is at the present in the late stages of the third. There is no slowing nor any evidence of manic agitation. The behavior she describes, including the cutting of a pair of her husband's pants indicates no deep rooted psychotic trend."

Dr. Lipton said: "There is no indication of any severe neurotic or psychiatric process."

A fair analysis of the evidence before Judge Walker emphasizes its sharply conflicting character. The affidavits of the three doctors from New York, on the basis of their single examination, do not disclose that any change had taken place in the defendant's condition between April 22, 1965 and the date of their examination on May 27, 1965. The tenor of those affidavits follows that expressed by Dr. Green and Dr. Corpening which were considered by Judge Walker. There is no evidence the fitness or unfitness of either party had changed between the hearings. There is no evidence the needs of the boys had changed during that time, or that they were not properly cared for by the father.

A judgment awarding custody is based upon the conditions found to exist at the time it is entered. The judgment is subject to such change as is necessary to make it conform to changed conditions when they occur. In a bitter controversy between separated parents over the custody of children, one is usually dissatisfied with the award. The aggrieved party, however, must appeal to the Supreme Court, or must wait for a more favorable factual background in which to demand another hearing by motion in the cause. "It may be well to note that on a hearing of this kind the judgment is not

intended to be a final determination of the rights of the parties touching the care and control of the child, but, on a change of conditions, properly established, . . . the question may be further heard and determined." *In Re Means,* 176 N.C. 307, 97 S.E. 39. The pleadings and the affidavits show the intense bitterness existing between the parents of the two boys whose custody is here involved. Whether the one or the other should be awarded exclusive custody, or whether in the light of the background the boys should be required to switch from one to the other each week, are matters of grave concern that the courts, both trial and appellate, may not view lightly.

This controversy illustrates the difficulty of determining disputed facts from *ex parte* affidavits. When this case is heard on the merits, where the witnesses are before the court and subject to cross-examination, the findings thus established will, or may, justify a change in the order. Judge Gwyn's finding of changed conditions is not supported by the evidence. Absent evidence of change he was without authority to modify Judge Walker's order. A famous Civil War Cavalry hero, asked to explain his successful battle tactics, replied, "Git thar fust." In this case Judge Walker "got thar fust."

Reversed.