IN THE MATTER OF LYNWOOD CLARENCE BOWEN, III
No. 7018DC10

(Filed 25 February 1970)

**1. Divorce and Alimony § 22;    Infants § 9—    modification of child custody order — changed circumstances**
    Child custody orders may be modified or vacated at any time upon motion in the cause and a showing of changed circumstances by either party or anyone interested. G.S. 50-13.7.

**2. Divorce and Alimony § 24;    Infants § 9—    change in child custody — absence of finding that person having custody is unfit**
    A change in child custody may be ordered even though there is no finding that the person having custody under a previous order has become unfit or is no longer able or suited to retain custody.

**3. Divorce and Alimony § 24; Infants § 9— child custody — changed conditions**

A judgment awarding custody is based upon conditions found to exist at the time it is entered and is subject to such change as is necessary to make it conform to changed conditions when they occur.

**4. Divorce and Alimony § 24; Infants § 9— modification of child custody — findings of fact — appellate review**

Court's findings of fact in modifying a child custody order are conclusive on appeal if supported by competent evidence.

**5. Divorce and Alimony § 24; Infants § 9— modification of child custody — change of circumstances — sufficiency of findings**

In this proceeding upon motion of the mother for modification of a child custody order which awarded custody to the father, findings by the trial court supported by competent evidence were sufficient to support the court's modification of the original order to award custody to the mother on the basis of a material change of circumstances, where, at the time the original order was entered, the mother was attending high school in both the summer and winter months, her plan was to take the child to the out-of-state home of the maternal grandfather, who was divorced and remarried with two stepdaughters and a daughter of the second marriage living with him, and who would be absent from home for three weeks out of each month, and the father's plan was to keep the child in the home of the paternal grandparents, and the court found that the mother had since become married to a man of good character and reputation and had a good and comfortable home into which to take the child, that for at least a year she had demonstrated stability and established an excellent reputation, that she planned to care for the child full time in the home, and that while in the father's custody the child was being cared for by various persons, including the father, paternal grandparents, and nursery school personnel.

APPEAL by respondent from *Gentry, District Judge,* 11 June 1969 Session of GUILFORD County District Court.

Motion was filed in this cause on 24 February 1969 by Karen Sue Dickerson (formerly Karen Sue Bowen) seeking a modification of a custody order entered in the Guilford County Domestic Relations Court on 28 July 1967. The proceeding was transferred from the Domestic Relations Court to the District Court on 2 December 1968 pursuant to G.S. 7A-135.

The movant and the respondent, Lynwood Clarence Bowen, Jr., were married on 5 May 1966 at the respective ages of 15 and 17. Both were in school at the time. Lynwood Clarence Bowen, III, was born to the marriage on 19 November 1966. On 21 June 1967 the parties separated and on 29 June 1967 the father instituted a proceeding for custody of the infant child. A custody hearing was held

on 26 July 1967 and based on evidence presented at the hearing the presiding judge made findings, including the following:

"[T]he court finds that both the petitioner and the respondent are living in the City of Greensboro, North Carolina, at the present time. The court finds that the petitioner has offered plans to keep the child in the home of the paternal grandparents where he resides and that the respondent has offered plans to keep the child with the maternal grandfather in Albany, Georgia.

The court finds that the petitioner is gainfully employed in the City of Greensboro where he works as Assistant Manager of Carolina Theater, and that the respondent has been attending high school during the summer months and will be a student during the winter months, she being a rising senior in high school. The court finds that the respondent will be in school a great deal of the time and that her father, the maternal grandfather, in whose home the child would be residing, is away from his home in Albany, Georgia, for approximately three weeks out of each month.

The court finds, upon hearing all of the evidence presented, that both the petitioner and the respondent are fit, proper and suitable persons to have the care, custody and tuition of the minor child born of the marriage, but the court finds and holds under all of the circumstances, and after fully considering the plans offered by each party for the care, custody and tuition of the minor child, that the plan offered by the petitioner is in the best interest of the said child and that the home of the paternal grandparents where the petitioner is residing is a fit, proper and suitable place for the rearing of the minor child.

*     *     *

This matter is retained for further orders of the court."

On 28 July 1967 an order based on the court's findings was entered awarding custody to the father and granting liberal visitation privileges to the mother.

A hearing was held on the present motion on 23 April 1969. After hearing extensive testimony and reviewing numerous affidavits presented by both parties the court made findings including the following which are summarized:

1. The child's mother, Karen Sue Dickerson, was granted a divorce from the father on 8 March 1968 in the State of Georgia and married David J. Dickerson on 16 March 1968.

2. David J. Dickerson, 22 years of age, is a Marine Corps veteran and has a disability rating of forty percent as a result of wounds sustained in service. He is a high school graduate and has taken courses in drafting, electricity and pipe fitting. Following his discharge from the Marines in October, 1968, he and his wife returned to his home town of Cleveland, Tennessee, and purchased a three-bedroom home in a good residential area consisting of new homes being occupied by young people with small children. One bedroom is furnished as a nursery. Mr. Dickerson is employed in a transfer and storage business owned by his family and has an annual income of from $6,500 to $7,500 a year. His duties do not preclude his being home nights.

3. David Dickerson saw the child daily while the child was in the custody of his mother for a three weeks visitation in 1968; he loves the child and will give the child all the love and care of which he is capable. The child appears to be very fond of him.

4. Karen Dickerson is extremely fond of her child and has given the child good care and treatment during periods when the child was visiting with her. She has completed all of her high school work with the exception of a few credits and since living in Tennessee, has been employed by the Cleveland National Bank and more recently, by the Duplan Corporation at a weekly salary of $68.00; that she has an understanding with her employer that, should she obtain custody of her child, she would quit work and stay home and look after her child.

5. The Department of Public Welfare of Cleveland, Tennessee, investigated Mr. and Mrs. Dickerson and the home surroundings, and reported to the court that the Dickerson home is a very livable home in an excellent neighborhood; and that a bedroom has been completely furnished as a nursery; also, that Mr. and Mrs. Dickerson bear a good character and reputation and are highly thought of in the area where they live. The report recommended the home as being a suitable home and Mr. and Mrs. Dickerson as excellent parents who would love and well care for the child.

6. Mr. and Mrs. Dickerson attend church and are in the young couples class; Mr. Dickerson bears an excellent reputation and character in the community and he is recommended by the leading citizens in the community where he lives as a mature and responsible person.

7. Mrs. Dickerson, during her one year in the community, has established herself as a person of good character and reputation who

is fond of children, and she has conducted herself in a manner that has convinced her associates that she is a responsible person and would provide good care for her child.

8.   While Mr. Bowen and his former wife were living together, the child was kept for them during the daytime by Mrs. R. E. Haynes and she has continued to keep said child during the daytime, four days each week. At the time of the separation between Mr. and Mrs. Bowen, Mr. Bowen was employed by the Carolina Theater of Greensboro and worked from 11:00 a.m. until 11:00 p.m. throughout most of the week. The child was sometimes taken to and from Mrs. Haynes' nursery by the father and at other times by the paternal grandmother and paternal grandfather. For the past six months, the father has been employed by Southern Bell Telephone Company and does not work on the third Saturday of each month.

9.   The father has shown considerable interest in the welfare of the child and considerable affection toward him. Since the separation the child has lived with his father in the three-bedroom home of the paternal grandparents, at 2515 Glenhaven Drive, Greensboro, North Carolina. One bedroom has been particularly arranged for the child. The paternal grandmother is employed with the Parking Control Division of the Greensboro Police Department, and the paternal grandfather works for Talley Laundry and Machine Company. Both have excellent reputations and character in the community; they are active in their church, and they have given the child excellent care. The child appears to be well adjusted and very fond of his father, paternal grandparents and a teenage uncle who resides in the home. The child has gotten all of his shots and appears to be in excellent health.

10.   The father is a mature individual and bears a reputation beyond question; he has carried the child to church and has been brought up in church himself.

Based upon its findings the court concluded that both parents are fit and proper persons to have the custody of the minor child but that the full development of the physical, mental and moral faculties of the child would be most easily attained in the home of the mother since she has the capacity, desire, time and facilities for such. The court further concluded:

"6.   That there has been a substantial change in the condition and circumstances as the same existed at the time the original order of custody was entered in July of 1967, in that the mother's living conditions have become fixed and definite and that

she is able to spend more time with her son and be available to him at all times to take care of his needs and to give him the tender love and affection that only a mother can give.

7.  That it would be to the best interest and welfare of Lynwood Clarence Bowen III that he be placed in the care, custody and control and supervision of his mother, Karen Sue Dickerson and her husband, David Dickerson.

8.  That it would be to the best interest and welfare of said child that he have ample opportunity to visit with his father and paternal grandparents and that provisions for such should be incorporated herein."

Judgment was entered upon the findings and conclusions modifying the order of 28 July 1967 and granting general custody of the child to the mother. The father was granted reasonable visitation privileges and temporary custody each year for one week in December and the entire months of June, July and August. The father appealed assigning error.

*Latham, Pickard & Ennis by James F. Latham for petitioner appellee.*

*Comer and Harrelson by John F. Comer for respondent appellant.*

GRAHAM, J.

[1]  Custody orders may be modified or vacated at any time, upon motion in the cause and a showing of changed circumstances by either party or anyone interested. G.S. 50-13.7. "[T]he control and custody of minor children cannot be determined finally. Changed conditions will always justify inquiry by the courts in the interest and welfare of the children, and decrees may be entered as often as the facts justify." *In re Marlowe,* 268 N.C. 197, 199, 150 S.E. 2d 204.

Respondent contends that the court erred in modifying the custody order without a showing "of a *substantial change* in circumstances that would enhance the child's welfare and with no showing or finding that the father was *not* a fit and proper person to have the custody and control of his son as he had been found to be on June 28, 1967."

[2]  We do not understand the law in this jurisdiction to be, as respondent argues, that a change in custody may not be ordered absent a finding that the person having custody under a prior order

has become unfit or is no longer able or suited to retain custody. While such a consideration is of utmost importance in inquiring into the matter of custody, it is not alone determinative. In *Shepherd v. Shepherd,* 273 N.C. 71, 159 S.E. 2d 357, Branch, J., speaking for the court, reiterated the rationale concerning the modification of custody decrees upon a change of circumstances by quoting the following principle set forth in *Hardee v. Mitchell,* 230 N.C. 40, 51 S.E. 2d 884, as follows:

> " '. . . the welfare of the child at the time the contest comes on for hearing is the controlling consideration. . . . It may be well to observe . . . that the law is realistic and takes cognizance of the ever changing conditions of fortune and society. While a decree making a judicial award of the custody of a child determines the present rights of the parties to the contest, it is not permanent in its nature, and may be modified by the court in the future as subsequent events and the welfare of the child may require. . . .' "

[3]     "A judgment awarding custody is based upon the conditions found to exist at the time it is entered. The judgment is subject to such change as is necessary to make it conform to changed conditions when they occur. . . ." *Stanback v. Stanback,* 266 N.C. 72, 145 S.E. 2d 332.

[4]     The record discloses substantial competent evidence in support of the court's findings and the findings are therefore conclusive on appeal. *Teague v. Teague,* 272 N.C. 134, 157 S.E. 2d 649; *Thomas v. Thomas,* 259 N.C. 461, 130 S.E. 2d 871. The more difficult question is whether the findings establish a change in circumstances of such a material nature as to permit a change in the custody order of 28 July 1967. We are of the opinion that they do.

[5]     When the original order was entered the mother was attending high school in both the summer and winter months. Her plan was to take the child to the home of her father who lived in Albany, Georgia. She would be in school during the day and her father would be absent from the home for three weeks out of each month. The record indicates that a decision in the matter was reserved so that a report could be obtained as to the conditions and circumstances in the home of the maternal grandfather. No report appears in the record but the record does indicate that the grandfather was divorced and remarried. Living with him in the home were two stepdaughters and a child by the second marriage. No findings were made concerning the suitability of his home but there was a finding that ". . . the court finds and holds under all of the circumstances, and after

fully considering the plans offered by each party . . . that the plan offered by the petitioner [father] is in the best interest of the said child." At that time the mother was hardly more than a child herself. It was evident that her plan to take the child into the home of her father and his new family, without assurances that the child would receive proper care while the mother attended school, offered little basis for an award of custody when compared with the father's plan for the care of the child.

The mother's circumstances at the time of the hearing on the motion to modify the original order had changed substantially. She was married to a man of good character and reputation and had a good and comfortable home into which to take the child. She was older and more mature. For at least a year she had demonstrated commendable stability and established an excellent reputation. She planned to terminate all employment so as to care for the child full time in the home. These findings, when contrasted with a situation where the child was being cared for at various times by various persons including a father, grandfather, grandmother (all of whom were employed outside the home) and nursery school personnel, formed a basis for the court's conclusion that the interest and welfare of the child would best be served through a modification of the prior custody order. The trial judge observed the parties and witnesses and had an opportunity to evaluate their testimony first hand. The evidence fully supports his findings which in our opinion support his conclusions and judgment.

Respondent insists that a different result is dictated by the cases of *Shepherd v. Shepherd, supra,* and *Stanback v. Stanback, supra.* We do not agree. In the *Shepherd* case, the lack of a finding of fact of any change of circumstances affecting the welfare of the child required that the matter be remanded for a hearing *de novo*. In the *Stanback* case, the evidence offered was practically identical to the evidence that had been considered by the judge that entered the first custody order less than two months previously. In the instant case we have before us extensive findings and substantial evidence indicating a change in circumstances.

Affirmed.

BROCK and BRITT, JJ., concur.