In re Williamson

## VII

We conclude that defendant received a fair trial, free of prejudicial error.

No error.

Judges JOHNSON and PARKER concur.

---

IN RE: ERICA RENEE WILLIAMSON

No. 8413DC630

(Filed 1 October 1985)

1. **Infants § 6.2— child custody—modification of order—insufficient evidence and findings**

   An order transferring custody of a child was not supported by evidence and findings that circumstances had substantially changed since the original placement of the child where the child's father had murdered the mother and was serving a prison sentence of twenty-five years; the child's closest relatives were Melissa Clark, her mother's first cousin, and her paternal aunt Fredrickia Britt; the Clarks lived in Mecklenburg County and the Britts in Columbus County, where the murder occurred; the court had originally placed the child with the Clarks because the court concluded that it was in the best interest of the child not to be in the community where the killing occurred, because the Clarks were deemed capable of establishing and maintaining a cordial and stable relationship with the child and her half-sisters, and because the Clarks were deemed capable of dealing with problems that might arise if the father was released from custody and sought to establish some relationship with the child; the additional reviews cited by the court in its order changing custody were of matters that existed when the first determination was made; and the additional factors listed by the court either were not supported by competent evidence or concerned facts and conditions that existed when custody was awarded to the Clarks. The only change was in the court's evaluation of the circumstances and the only basis for returning the child to Columbus County in the custody of the Britts was the assumption that the child's father would assert his parental right to custody after parole and that placing the child with the Britts would probably result in a permanent placement with blood relatives. A change of custody must be based on conditions that exist at the

time rather than upon conditions it is assumed will exist in the future; moreover, there is nothing miraculous about the blood of close relatives and being reared by them is not necessarily beneficial in the long or short term.

**2. Guardian and Ward § 2— court order changing guardian of child—no showing of neglect or unfitness—invalid**

An order changing the legal guardians of a child, along with custody, was not valid where there was no showing that the guardians had either neglected their duties or were unfit to continue serving in that capacity. G.S. 33-9.

APPEAL by respondents from *Gore, Judge*. Orders entered 16 December 1983, 24 January 1984 and 21 March 1984 in District Court, COLUMBUS County. Heard in the Court of Appeals 7 February 1985.

This appeal concerns the custody and guardianship of Erica Renee Williamson, now four years and seven months old. The petitioners are Fredrickia Britt, a sister of the child's father, and her husband, Charles Britt. The respondents are Melissa Clark, a first cousin of the child's mother, and her husband, Arthur Clark. The Britts live in Columbus County, the Clarks in Mecklenburg County.

On 4 May 1982, at the age of sixteen months, the child was adjudicated to be a dependent child pursuant to G.S. 7A-517(13) and a guardian *ad litem* was appointed to protect her legal and property rights. The adjudication was made because on 30 April 1982 her father, Charles Fred Williamson, had shot and killed her mother following a custody hearing in the Columbus County District Court. Williamson eventually pled guilty to second degree murder and is now serving a prison sentence of twenty-five years. Following the dependency hearing, Judge William E. Wood placed the child in the temporary custody of the Columbus County Department of Social Services and recommended that neither placement nor visitation with the Britts be considered because of the "possibility of future harm to the child by being in the home of the sister of the individual who killed her mother." Six days later the Britts filed a petition to adopt the child, which was consented to by the father, who was in jail awaiting trial. On 25 May 1982, another District Court judge received a home study report of several possible placements for the child, including the Britts. On 8 September 1982, an interlocutory order was entered allowing the adoption to proceed; but two days later Judge William C.

Gore entered an order making Melissa and Arthur Clark of Mecklenburg County the guardians of the person of the child pursuant to the provisions of G.S. 7A-585 and nullifying the father's consent to the adoption. Judge Gore's preliminary findings of fact included the following: Erica has two minor half-sisters, children of her mother by a previous marriage; her closest adult relations are her paternal aunt, Fredrickia Britt, and her mother's first cousin, Melissa Brown Clark; both the Britts and the Clarks have suitable homes for Erica; both the Britts and the Clarks are "excellent prospective placements"; and her guardian *ad litem* recommends placement with the Clarks. After stating the foregoing findings, the judge "CONSIDERED THE FOLLOWING SPECIAL CONCERNS arising out of the extraordinary nature of these proceedings" and made further findings as follows:

a. The ability of the persons with whom placement is made to establish and nurture a cordial and stable relationship between the juvenile and her two half-sisters in an attempt to provide her with some continuity and stability later in her life, . . .

b. The ability . . . to deal with the problems which might arise in the event that Charles Fred Williamson is released from custody and seeks to establish some relationship with his child; and

c. The deleterious effect, if any, on the juvenile if she continued to reside in the same community wherein those tragic events . . . occurred, . . .

After such considerations, the COURT FINDS that Joseph Powell has expressed an inability and an unwillingness to associate with the Britts, and there could therefore be no continuing relationship between the juvenile and her half-sisters . . . The Court is further unconvinced that Charles Williamson would not prove an extreme disruption of the juvenile's stability if he were released and the child were in the custody of his sister. . . .

Based on its findings of fact and special concerns, the court concluded that it was in the "best interest" of the child to be placed with the Clarks and appointed them her legal guardians. The court also concluded that "the interlocutory order permitting the

adoption to proceed was null and void insofar as these proceedings are concerned," since the child's father, who was in prison, "had neither legal nor physical custody" of Erica at the time he consented to her adoption by the Britts. The Britts appealed from this order and by a supplementary order the court denied the Britt's request for visitation privileges pending a disposition of the appeal, which was eventually dismissed on 6 March 1984 for lack of standing by the Britts. *In re Williamson*, 67 N.C. App. 184, 312 S.E. 2d 239 (1984).

On 20 June 1983 when the child's placement came on for mandatory review the court found that the child had adjusted well to being with the Clarks, and no reason existed for modifying the placement. The court also found that it was in the child's best interest for the Britts to visit her on occasion and that the Clarks and Britts had agreed to work out a satisfactory schedule among themselves. But the parties' attempts to work out a satisfactory visitation schedule were unproductive and by order entered on 18 August 1983 the court ordered four specific days of visitation in August, September, and October 1983. On 16 December 1983, without a hearing, the court found as a fact that the prior visitation order had been "satisfactorily carried out," concluded as a matter of law that it was in the "best interest" of the child to continue visitation with the Britts, and ordered a visitation for the next day, 17 December 1983. This visit was not made, however, because the Clarks had no notice of the order and the child was not there when Mrs. Britt showed up at their house in Charlotte demanding to see her. The Britts then filed a motion to show cause and a motion to give them custody of the child. An order to show cause was entered which the Clarks moved to dismiss because the custody issue was on appeal to this Court and no change of circumstances had been alleged.

Following a hearing held 20 January 1984, Judge Gore entered an order on 24 January 1984 changing the custody and guardianship of the child from the Clarks to the Britts. In doing so the court found that her initial placement with the Clarks was based largely on the court's special concerns, but that consideration of the following required that a change be made: Erica's knowledge that her father killed her mother; that the Clarks indicate an unwillingness to cooperate with the Britts' visitation; that her father will probably be paroled after serving approx-

imately ten years of his prison term and upon his release will probably attempt to "reaffirm his parental rights"; that placement with the Britts would cause immediate short term considerable emotional trauma, "but would probably result in a PERMANENT PLACEMENT with BLOOD RELATIVES"; and that a permanent placement at the earliest possible age is of "paramount importance." From these purported findings, the court concluded that placement with the Britts was in Erica's best interest, appointed them as her guardians, and directed that custody be transferred in seven days. When custody was not transferred, the Britts filed another show cause motion, and in an order filed 21 March 1984 Judge Gore, after refusing to recuse himself, struck the 27 February 1984 show cause order since the record showed no legal basis to support it, shortened the notice for a new show cause hearing and directed Arthur Clark to present the child in court at that time. The Clarks, having appealed from the various orders entered, filed a motion in this Court to stay the proceedings below pending the resolution of this appeal and the motion was granted on 6 April 1984.

*C. Franklin Stanley, Jr. for petitioner appellees Charles E. Britt and Fredrickia W. Britt.*

*Lee & Lee, by Junius B. Lee, III, Guardian ad litem for Erica Renee Williamson.*

*George Daly, George M. Anderson, McGougan, Wright & Worley, by D. F. McGougan, Jr., for respondent appellants Arthur Clark and Melissa Brown Clark.*

PHILLIPS, Judge.

When this case was last here, *In re Williamson*, 67 N.C. App. 184, 312 S.E. 2d 239 (1984), it was intimated that the various orders issued by the court below *after* appeal was taken were without either authority or effect because of the "long standing general rule that an appeal removes a case from the jurisdiction of the trial court. . . ." *Bowen v. Hodge Motor Co.*, 292 N.C. 633, 635, 234 S.E. 2d 748, 749 (1977). Whether this case is governed by the general rule—(or by G.S. 7A-668, which authorizes the trial judge pending the appeal of a juvenile case "[f]or compelling reasons . . . [to] enter a temporary order affecting the custody or placement of the juvenile" when the best interest of the juvenile

or the state so requires)—need not be determined, however, because we prefer to decide the other questions that the appeal raises on their merit, lest they be the subject of still more motions, hearings and orders in the court below, of which there has already been a surfeit.

[1] The main question that the appeal raises is whether the order transferring custody of the child from the Clarks to the Britts is supported by evidence and findings that circumstances had substantially changed since the child was placed with the Clarks. It is fundamental that before an order may be entered modifying a custody decree that there must be a finding of fact of changed conditions. This is because:

> A decree of custody is entitled to such stability as would end the vicious litigation so often accompanying such contests, unless it be found that some change of circumstances has occurred affecting the welfare of the child so as to require modification of the order.

*Shepherd v. Shepherd*, 273 N.C. 71, 75, 159 S.E. 2d 357, 361 (1968). No such finding was made here by the trial court and if such a finding had been made there is nothing in the record to support it. The court in its order merely stated that it had "conducted reviews" and "received additional evidence concerning matters and things which have occurred and transpired requiring the Court to reexamine the 'Special Considerations' [of the 10 September 1983 order] and also to consider additional factors. . . ." But the additional reviews conducted were of matters that existed when the first determination was made and the "additional factors" listed by the trial court either are not supported by competent evidence or concern facts or conditions that existed when custody was awarded to the Clarks, and have not changed since then. The only purported fact found by the court that did not exist in September 1983 when the child was placed with the Clarks was their inability or unwillingness to cooperate in the visitations of the Britts—a minor matter, in our view, that does not bear materially on the child's welfare. Even so, the finding is unsupported by evidence. The court's *ex parte* order filed 16 December 1983 directing further visitations found that the visitations already made had "been satisfactorily carried out" and the record indicates the court's conditions in regard to those visits were

fully met by both parties. That the visitation preemptorily ordered on 16 December 1983 for the next day was not carried out is irrelevant, as the court later recognized, since the Clarks had no notice of the court's order.

But the other circumstances that were deemed to support a change of custody had not changed since custody was given to the Clarks several months earlier; the only change was in the court's evaluation of them. At both times the Britts were close blood relatives of the child and lived in Columbus County where it is generally known that the child's father murdered her mother. At both times the child's father, Mrs. Britt's brother, was in prison and the likelihood of him being a disruptive influence upon his eventual release from prison if she is then living with the Britts was the same. At both times it was important for the child to maintain contact with her two half-sisters, who would not visit her if she was living with the Britts, but do visit her at the Clarks. And both times it was of paramount importance that the child have a permanent, stable, tension free home environment. When these matters were first considered the court soundly and necessarily concluded, it seems to us, that the best interests of the child required that she not be placed "in the same community wherein those tragic events . . . occurred," and the Clarks were made both custodians and legal guardians of the child because they were deemed capable of establishing and maintaining "a cordial and stable relationship" with the child and her half-sisters and of dealing "with the problems which might arise in the event Charles Fred Williamson is released from custody and seeks to establish some relationship with his child." Yet when these same concerns or circumstances were reconsidered a few months later, even though the child had "received excellent care" at the hands of the Clarks during the interim, as the court found and all the evidence shows, and even though it was recognized that taking the child from the Clarks "would cause considerable emotional trauma to the child for the immediate short term," the court concluded that it would be in the "permanent best interest of the child" to return her to Columbus County in the custody of the Britts. The only bases stated for this step, and the record suggests no others, are the court's assumptions that some years from now after he is paroled from prison the child's father will assert his parental right to custody, and that placing the child with the

Britts "would probably result in a *permanent placement* with *blood relatives.*" (Emphasis by the trial court.) Manifestly, these conditions do not now exist and are therefore no basis whatever for the order entered, since a change of custody must be based upon conditions that exist at the time, rather than upon conditions that it is assumed will exist at some future time. *Stanback v. Stanback*, 266 N.C. 72, 145 S.E. 2d 332 (1965).

But even apart from their anticipatory nature the purported findings do not support the court's conclusion that changing custody to the Britts would be in the child's best interests. Circumstances determine custody cases as all others. There is nothing miraculous about the blood of close relatives and being reared by them is not necessarily beneficial to children either in the long or short run; and though cultivating family ties and tradition is usually wise and a stabilizing blessing to children, under some circumstances it could be an overwhelming burden that it would be folly to incur. In the context of the circumstances of this case, there is simply no basis at all for concluding that this child's best interests would be served by requiring her to live with people who will be a daily reminder of her mother's murder. Furthermore, the child's family heritage is not limited to the paternal line; she has other family ties and traditions, which are free of any burdensome taint, that are being strengthened under the order first entered.

[2] The other important question raised by this appeal is whether the order removing the Clarks as legal guardians of the child's person and appointing the Britts in their stead is also invalid. It is invalid, though not for precisely the same reason as the custody order. A legal guardian of a child's person, unlike a mere custodian, is not removable for a mere change of circumstances. Unfitness or neglect of duty must be shown. G.S. 33-9. Our rule is in accord with the general American rule on this point. *See*, 39 Am. Jur. 2d *Guardian and Ward* Secs. 57, 58 (1968). A guardian "may not be removed at the mere caprice of the court or the complaining party." 39 C.J.S. *Guardian and Ward* Sec. 42, p. 84 (1976). Since there was no showing, and the court did not find, that the guardians had either neglected their guardianship duties or were unfit to continue serving in that capacity, the order of removal cannot stand.

Thus, we vacate the order entered on 24 January 1984 and also the orders entered to implement it on 16 March 1984 and 21 March 1984. The *ex parte* order entered 16 December 1983 regarding visitations, which is now moot, is also vacated.

Vacated.

Judges WEBB and MARTIN concur.