IN RE MARY V. MEANS, INFANT.

(Filed 30 October, 1918.)

1. **Habeas Corpus—Infants—Parents.**

   The parents are *prima facie* entitled to the custody of their minor children, with the preference in favor of the father, if the choice is between them, when they are equally worthy and fitted therefor; though, when both are equally worthy, it may be awarded to the mother when it is shown that the best welfare of the child requires it.

2. **Same—Nonresident Parent—Orders—Bonds—Jurisdiction.**

   Where, on appeal in *habeas corpus* proceedings brought by the wife to obtain the custody of her infant daughter from her husband, it has been found upon supporting evidence that the husband is unfitted to retain the child; that he had theretofore left it with its mother in another State and had secretly taken the child therefrom and brought it to this State and placed it with his own mother and sisters, who were well qualified and suitable therefor; and also that the mother was a fit and suitable person to have her child and give it the support, care and attention it required: *Held*, that on the facts presented in this record, an order of the lower court awarding the custody of the child to the mother is a proper one; and a requirement that she should permit the child to visit its father here, and, being a nonresident, that she give bond to obey the orders of the court, is improperly made.

3. **Habeas Corpus — Infants — Unsuitable Father — Custody Delegated — Rights of Mother.**

   Where a nonresident mother has properly been awarded the custody of her child in *habeas corpus* proceedings in the courts of this State, against the claim of her husband, its father, and it has been found that the father of the child is an unfit and unsuitable person, the fact that he had placed the child with his own mother and sisters, who are fit and suitable, will not have any effect upon the rights of the mother to its custody.

4. **Habeas Corpus—Parents—Wife—Independent Domicile.**

   Where the misconduct of the husband has forced his wife to leave him, she may acquire an independent domicile which may determine that of an infant child whose custody she seeks to obtain in proceedings in *habeas corpus* against her husband.

5. **Habeas Corpus — Parents—Nonresidents—Courts—Jurisdiction—Foreign Domicile—Awards Not Final.**

   An award in *habeas corpus* proceedings does not finally determine the rights of the parties to the custody of the child sought in *habeas corpus* proceedings; and where, in our courts, the award has been in favor of a nonresident mother against the father of the child, the courts, properly established and having jurisdiction at the domicile of the mother, may further hear and determine the matter touching the care and control of the child on such changed conditions, properly established, that would require it.

HABEAS CORPUS to determine the right of present custody and control of Mary Virginia Means, an infant 5 years and 8 months old, heard

before *Harding, J.,* by consent, at county courthouse in the city of Charlotte on 17 September, 1918.

The petitioner in the cause is Mary A. Means, the mother of the child, resident in Auburn, R. I., and the respondents are Frank H. Means, the father, and the mother and sisters of the respondent, with whom the child is now residing at their home in Concord, placed there by the father.

On the hearing, and from the evidence submitted, his Honor made very full and pertinent findings of fact, and thereupon adjudged, in effect, that the child be awarded to the mother, she to enter into a bond in $1,000 to hold her at all times amenable to the orders of the court concerning her and to allow the respondents, at their expense, to bring the child to North Carolina from the home of the mother in Auburn, R. I., for three months in each year, from 1 June to 1 September, to reside with the mother and sister of the father, the respondents in such case to give a bond in $1,000 to obey the orders of the court and to return the child at the end of designated period, the respondents to bear the expense of the trip, etc.

From this judgment both sides appealed. Respondents excepted because the child was awarded to the mother and petitioner because the child was to be brought to North Carolina for the three months period.

*A. B. Justice for petitioner Mary A. Means.*
*H. S. Williams and L. T. Hartsell for respondents.*

Hoke, J. From the very full and pertinent findings of fact by his Honor it appears that in 1908 respondent F. H. Means took up his residence in Auburn, R. I., to pursue his occupation as electrician, and, continuing to reside there, in 1911 he was married to petitioner, and thereafter their child, Mary Virginia, was born, she being now 5 years and 8 months of age; that they have resided in Auburn since their marriage and until their separation in May of the present year, except about thirteen months in 1916 and 1917, when they came to North Carolina to live; that for some time during their stay in this State, respondent F. H. Means was habitually engaged in the unlawful sale of whiskey in North Carolina and fled the State by reason of that charge, the family returning to Auburn, R. I. Without going into the details of defendant's misconduct, which appear fully in the findings of the court, it further appears that for the past four or five years the respondent F. H. Means has been dissipated and engaged in unlawful practices, and after the return to Rhode Island from North Carolina the conduct of respondent, which had long been severe and cruel towards petitioner, became so unbearable and threatening that petitioner, justly

fearing for the safety of herself and child, was compelled to leave respondent and seek protection in the home of her father and mother, and has consulted attorneys of established repute with a view of instituting proceedings for a divorce in the Rhode Island courts.

With regard to the conditions and circumstances resultant from the misconduct of the respondent and the capacity and disposition of the respective parties towards the child and its proper care and custody, the findings of his Honor more directly relevant are as follows:

"That the petitioner, after leaving her husband as set out, obtained reputable employment, from which she derives a sufficient income to support herself and child; that since leaving her husband the petitioner has resided in the home of her mother, in the city of Auburn, R. I.

"15. That on or about 9 May, 1918, said Frank H. Means, after sending word to the petitioner that he was leaving the State of Rhode Island to accept a position in the State of Georgia, procured an automobile, went by the house of the petitioner's mother and secretly and forcibly entered the premises of the petitioner's mother and secretly and forcibly took the said Mary Virginia Means, daughter of the petitioner and respondent, Frank H. Means, from the home of the petitioner's mother without petitioner's knowledge and consent, and brought her to the State of North Carolina and delivered her into the custody of the respondent's mother, who resides in the town of Concord, N. C.

"16. That Frank H. Means, from 1908 until May of this year, has had his residence and domicile in the State of Rhode Island, with the exception of about thirteen months during 1916 and 1917, when he resided with the petitioner in North Carolina; (that the respondent Frank H. Means is not a resident of the State of North Carolina), but is now engaged in work in the State of West Virginia.

"17. That the petitioner is a woman of good character and is a fit person to have the custody of the said Mary Virginia Means, her daughter and the daughter of the respondent Frank H. Means; that she is living with her father and mother, who are people of good character and has sufficient ability and material resources to make the home of the petitioner and her daughter, Mary Virginia Means, comfortable, and that they are able to maintain, support and educate the said Mary Virginia Means, and that the said petitioner is able to maintain, support and educate her said daughter, Mary Virginia Means.

"18. (That the respondent Frank H. Means is not a resident of the State of North Carolina, and was not such resident at the time of the filing of the petition), nor at the time of the separation of the petitioner and the respondent Frank H. Means, nor at the time he took possession of the child of the respondent Frank H. Means and the petitioner and brought her to North Carolina.

"19. That Mary Virginia Means is a little girl about five years and eight months old, and that said Frank H. Means is not a suitable person to have the custody of said Mary Virginia Means; that the respondent Mrs. Coralie Means is the mother of said Frank H. Means, and is in comfortable financial circumstances and lives in the city of Concord, State of North Carolina; that Miss Catherine Means, Miss Myra Belle Means, and Mrs. Pauline Goodman are daughters of Mrs. Coralie Means and sisters of the respondent Frank H. Means; that each of them are ladies of good character; that Mrs. Coralie Means is a suitable person to have the custody of said child, and that her home is a suitable home in which said child may live; that Miss Catherine B. Means, Myra Belle Means, and Mrs. Pauline Goodman are fit persons to raise and maintain said child, so far as their intellectual, moral, social and financial ability is concerned."

There is further finding that for the last four months respondent has been employed in responsible work at Piedmont, West Virginia; that during that time he has been sober and industrious, and is receiving a salary of $81.60 per week.

On the question thus presented, it is the established principle in this State that parents have *prima facie* the right to the custody and control of their infant children, the father preferably, when it appears that he is fitted for the position and its responsibilities, though, as between the two, even when equally worthy, the mother may be allowed the superior claim when it is shown that the welfare of the child requires it. The doctrine and the basic reason for it and the authorities with us upon which it rests are set forth in the last case upon the subject as follows:

"It is fully recognized in this State that parents have *prima facie* the right of the custody and control of their infant children, the natural and substantive right not to be lightly denied or interfered with except when the good of the child clearly requires it. *In re Mercer Fain,* 172 N. C., 790; *In re Mary J. Jones,* 153 N. C., 312; *Newsome v. Bunch,* 144 N. C., 15; *Latham v. Ellis,* 116 N. C., 30.

In the case of Mary Jane Jones it is held that "This parental right should prevail whenever, being of good character, they have the capacity and disposition to care for and rear their children properly in the walk of life in which they are placed, a right growing out of the parents' duty to provide for their helpless offspring, not only enforcible as a police regulation, but grounded in the strongest and most enduring affections of the human heart. A substantial right, therefore, not to be forfeited or ignored except in some way or for some reason established or recognized by the law of the land."

It is also held with us in well-considered cases, and they are in accord with the rule now generally prevailing, that this right of the parents is

not universal and absolute; but even as between individuals, the same may be modified and disregarded when it is made to appear that the welfare of the child clearly requires it. *In re Alderman,* 157 N. C., 507; *In re Turner,* 151 N. C., 474; *In re Samuel Parker,* 144 N. C., 170.

In *Alderman's case, supra,* it was held that on proceedings in *habeas corpus* by a father for the possession of his child in the custody of the mother, the mother's possession of the child will not be disturbed if it appears that therein the physical and moral and spiritual welfare of the child will be the better preserved.

In *Turner's case* the opinion quotes with approval from *Chancellor Kent* to the effect "That the father, and on his death the mother, is generally entitled to the custody of their infant children, inasmuch as they are their natural protectors for maintenance and education, but the courts may, in their sound discretion and when the morals or safety or interests of the children strongly require, withdraw the infants from the custody of the father or mother and place the care and custody of them elsewhere." And in the case of *Samuel Parker* it was said in a concurring opinion that in this country the disposition of the child rests in the sound legal discretion of the court, and it will be exercised as the best interests of the child may require, citing *Newsome v. Bunch,* 142 N. C., 19; Tiffany on Persons and Domestic Relations, p. 308; Shouler on Domestic Relations, sec. 240. And further: "The best interest of the child is being given more and more prominence in cases of this character, and on special facts has been held the paramount and controlling feature in well-considered decisions," citing *Bryan v. Lynn,* 104 Ind., 227; *In re Welch,* 74 N. Y., 299; *Kelsey v. Greene,* 69 Conn., 291; *Atkinson v. Downing,* 175 N. C., 244.

It appearing from the facts in evidence and the findings of his Honor that, in this instance, the father has thus far proved himself unfitted for the care and control of his infant daughter, and that the petitioner is in a position to give her a sheltered home; that she will cherish her with a mother's affection, and is well qualified by character, intelligence and disposition to have charge of her education and development, a correct application of these principles justifies and upholds the ruling that the child be given to the mother without modification and without requirement that she be brought to this State for three months in each and every year, and that any bond be given for that or other purpose.

In the case of *In re Alderman, supra,* the child was given to the mother because the best interest of the child required it, and, speaking to this question in 20 R. C. L., 601-602, it is well said: "The natural affection of the parents is ordinarily the best assurance of the child's welfare, and the object to be sought for the child is not so much the luxury and social advantages which more wealthy guardians might be

able to give it as the wholesome intellectual and moral atmosphere more likely to be found in its natural home."

It is objected to this position that, although the father may not be personally qualified for the care or custody of the child, yet having placed it with his mother and sisters, who are competent to care for it, the preferable right of the father should be recognized, but we cannot so hold. The requirement that the child be brought to North Carolina for three months in each year, at considerable expense, and working an entire change of control and environment is, at her impressionable age or at any time, a most trying experience, and while we have no doubt that she has at present a comfortable home with its paternal grandmother and aunts, and from the character and benevolent disposition of these good relatives we are well assured that they will do their best for her, this is not their burden, and we do not think it should be imposed upon them. Moreover, the arrangement is subject to be modified or entirely changed at any time at the will of the father, and in such case' we are of opinion, as stated, that the child should be placed with the parent who can also give it a comfortable home and is qualified by character and disposition to rear it properly.

We were cited to decisions of our Court where a parent was prohibited from removing the child from the State, and it was contended that in no event should such removal be allowed without giving bond for its return then required. In *Page v. Page,* 166 N. C., 90, where an inhibition of this kind was adjudged, there was an action of divorce pending between the parties and where there was reason to believe that the merits of the controversy were with the resident parent. See *S. c.,* 161 N. C., 170. Even in case of proceedings pending, however, this is not an absolute or arbitrary principle and may be departed from when it is clearly manifest that the good of the child requires it. This was recognized in *Harris v. Harris,* 115 N. C., 587, a case also relied upon by respondent, and in which it was held, among other things, that "the court will not award the child to a nonresident mother if it does not appear that the child desires to go to her or that the father is not a proper person to have it, or that the child will not be benefited by the change," and in proceedings of this character and on the facts of this record it is eminently proper that the child should be allowed to go with the mother and abide in the home that she is ready to give it. True, that ordinarily the domicile of the father fixes that of his infant child, but where he has by his misconduct forced the mother to leave him, she is allowed to acquire an independent domicile of her own, and as to questions presented and involved in this hearing, such domicile should determine that of her infant child, awarded to her as her natural right. Indeed the home of the wife in Rhode Island being also the

matrimonial domicile it would seem that the courts of Rhode Island, in any aspect of the matter, have full jurisdiction of the subject and may well be trusted to do equal and exact justice between the parties. *Atherton v. Atherton,* 181 U. S., 155; *Ditson v. Ditson,* 4 R. I. 87; 9 R. C. L., 545, title, Domicile, sec. 8; *McGrew v. Mutual Life Ins. Co.,* 132 Cal., 85. In *Newsome v. Bunch,* 144 N. C., 15 (*S. c.,* 142 N. C., 19), the child was awarded to a nonresident father, who had shown that he was worthy and in every way qualified to care for it, and a like principle is approved and applied elsewhere in well-considered cases. *Ex Parte Davidge,* 72 S. C., 16; *Wood v. Wood,* 5 Paige Chan., 596; 29 Cyc., 1600. It may be well to note that on a hearing of this kind the judgment is not intended to be a final determination of the rights of the parties touching the care and control of the child, but, on a change of conditions, properly established and in the courts of the mother's domicile or other courts having jurisdiction, the question may be further heard and determined. 29 Cyc., 1605, citing *McGouch v. McGouch,* 136 Ala., 170, and other cases.

On respondent's appeal, the judgment of the Superior Court is affirmed, and on petitioner's appeal same is modified in accordance with this opinion. The child being awarded to the mother here, the respondent F. H. Means is thereby relieved of that portion of the order requiring him to pay the expense of transferring the child to Rhode Island and return.

The costs of appeal and of the hearing will be taxed against respondents, that of the lower courts to be made out and judgment entered therefor by the clerk of the Superior Court of Mecklenburg County.

On respondent's appeal, affirmed.

On petitioner's appeal, modified.