PHYLLIS MONTAGUE BLACKLEY (NOW PHYLLIS DANIEL) v. ROBERT HARRY BLACKLEY

No. 50

(Filed 15 May 1974)

1. **Divorce and Alimony § 24— child custody proceeding — jurisdiction**

The court in which a divorce action is brought acquires jurisdiction over the custody of the unemancipated children of the marriage, and such jurisdiction continues even after the divorce becomes final.

2. **Divorce and Alimony § 24— child custody order — requisites for modification**

The entry of an order in a custody matter does not finally determine the rights of parties as to the custody, care and control of a child, and when a substantial change of condition affecting the child's welfare is properly established, the Court may modify prior custody decrees; however, the modification must be supported by findings of fact based on competent evidence that there has been a substantial change of circumstances affecting the welfare of the child, and the party moving for such modification assumes the burden of showing such change of circumstances.

3. **Divorce and Alimony § 24— child custody — no changed circumstances — modification of order improper**

Evidence was insufficient to show a change of circumstances affecting the welfare of the parties' son so as to justify a modification of a prior order awarding custody to plaintiff mother where such evidence tended to show that plaintiff had remarried, her present husband had paid several antenuptial overnight visits to the home, the son was old enough to understand the impropriety of the visits, the present husband had disciplined the son by popping him on the bottom several times, but the husband and the son had a good relationship, and the mother loved her children and was concerned for their education, spiritual growth, and physical welfare.

ON *certiorari* to review decision of the Court of Appeals, 18 N.C. App. 535, 197 S.E. 2d 243, vacating Order of 5 June 1972, entered by *Chief District Court Judge Banzet*, of the Ninth Judicial District.

Blackley v. Blackley

Plaintiff and defendant were married on 2 July 1961, at which time plaintiff was sixteen years old. Two children were born to the marriage, Robert Harry Blackley, Jr., on 24 December 1962, and Teresa Annette Blackley, on 6 February 1965. Plaintiff and defendant were separated on 4 January 1966, and a judgment granting an absolute divorce was entered at the July 1967 Civil Session of Granville Superior Court. Plaintiff was awarded custody of the children, and defendant was granted visitation privileges "at any reasonable time." Defendant was ordered to pay to the plaintiff the sum of $100 per month for support of the two children.

Pursuant to G.S. 7A-259 (b) Judge Hobgood, by Order dated 9 May 1970, transferred the cause to the District Court Division. Upon motion of plaintiff and after a hearing, Judge Banzet entered an Order on 24 November 1970 increasing the monthly payments for support of the two children to $125 per month. On 12 May 1971, after finding that defendant was in arrears in his payments in the amount of $115, Judge Banzet entered a more detailed Order concerning visitation and transportation of the two children.

On 23 November 1971, defendant filed a Motion in the cause alleging that plaintiff had committed certain acts which made her unfit to have the care and custody of the children and prayed that the court enter such Order as " . . . may appear to be just and proper and for the best interest of said minor children." Plaintiff filed an Answer to the Motion denying any misconduct which rendered her unfit to have the care and custody of her children.

The Motion was heard by Judge Banzet on 9 December 1971, and on 20 December 1971. During the course of these hearings, defendant testified that he and one Earnest Stem observed the trailer occupied by plaintiff on 5 November 1971, from about 1:40 a.m. until 8:30 a.m., and there observed an automobile belonging to Don Daniel parked in the yard. At 8:13 a.m., Don Daniel came out of the trailer and left the premises shortly thereafter. Plaintiff came out of the trailer and fed a dog at about 8:30 a.m. He had previously seen Daniel's car parked in plaintiff's yard at approximately 6:15 or 6:30 in the morning.

Defendant further stated that he was divorced by plaintiff in July 1967, and that he remarried a few days later. His present wife, Janet, is a beauty parlor operator who has a ten year old child by a former marriage. Janet occasionally worked at night.

On cross-examination he admitted that whenever he saw the children, they were neat, clean, polite, courteous, and that they were doing well in school. He stated, "I say she was a fit mother until the 5th of November 1971."

Earnest Stem testified in corroboration of defendant's testimony concerning the events of 5 November 1971, and the presence of Daniel's automobile at plaintiff's trailer on other occasions.

The testimony of Harvey J. Ellis, Assistant Chief of the Butner Police and Fire Department, tended to show that plaintiff's reputation was good.

Janet Blackley did not testify, and defendant offered no evidence concerning her willingness to have the children born to the marriage of plaintiff and defendant in her home.

Defendant also called his nine year old son, Robert, who testified that Don Daniel had spent the night in plaintiff's trailer prior to her marriage to Daniel, and that Don Daniel had on occasion chastized him by "popping me on my bottom." We will hereafter further consider Robert's testimony.

Plaintiff's evidence tended to show that she married Don Daniel on 5 December 1971, and he lived with her and the children. There was nothing improper about his premarital visits. Her present husband loved the children and was good to them although he had "popped" them for disciplinary reasons. She stated that the children were devoted to each other.

She offered several witnesses, including her pastor, who testified as to her good character and her strong interest in her children's religious and educational life.

On 5 June 1972, after making full findings of fact, Judge Banzet entered an Order placing Robert in the custody of his father and leaving Teresa in the custody of her mother.

The crucial findings of fact upon which the Order was based is as follows:

"15. The movant introduced certain other evidence intended to reflect upon the fitness of Phyllis to have the care, custody and control of the children. The respondent introduced evidence intended to controvert the same. From such evidence the Court finds the facts thereon to be as follows: That Don Daniel, approximately a year before his

marriage to Phyllis, spent the night in the trailer home of Phyllis and children, on Christmas Eve, 1970, at other times, two particular nights being the night of November 4-5 and the night of November 5-6, 1971, one month before the marriage; 'that on numerous occasions he slept in Phyllis' bedroom, sometimes during the day and sometimes at night, taking what was described as 'naps' of ten minutes or two hours duration; that before the marriage and after it Mr. Daniel, with Phyllis' permission, spanked Bobby, or 'popped him on the rear' by way of correction or punishment; that Bobby is old enough to understand the impropriety of Mr. Daniel's antenuptial sojourns overnight in the home of plaintiff respondent and to resent the same; that the knowledge and recognition of these improprieties and the chastisement by his stepfather adversely affect him and will continue to do so; that it will be for the best interest of Bobby that the care, custody and control of him be given to his father, the movant.' "

Pursuant to G.S. 1A-1, Rule 59(a), plaintiff on 14 June 1972, filed a Motion for a new trial. The Motion and supporting Affidavits, in essence, averred that the good relationship between the children and their stepfather had appreciated during the months following the hearings. The relationship between defendant and his wife Janet had deteriorated, and Janet Blackley had threatened to leave if the children born to plaintiff and defendant were placed in her husband's custody. Defendant filed no responsive pleadings or affidavits to rebut these allegations. On 27 December 1972, Judge Banzet denied the Motion for a new trial, and plaintiff appealed from the Order of 5 June 1972, and the Order of 27 December 1972. The Court of Appeals vacated the Order of 5 June 1972. Defendant appealed.

*Watkins, Edmundson & Wilkinson by Sam B. Currin, III for defendant appellant.*

*Vann & Vann by Arthur Vann and Arthur Vann, III for plaintiff appellee.*

BRANCH, Justice.

The question presented by this appeal is whether there was sufficient evidence of change of circumstances affecting the welfare of Robert Harry Blackley, Jr., to justify modification of prior Orders placing him in the custody of his mother.

[1]   The court in which a divorce action is brought acquires jurisdiction over the custody of the unemancipated children of the marriage, and such jurisdiction continues even after the divorce becomes final. *Stanback v. Stanback,* 266 N.C. 72, 145 S.E. 2d 332; *Cox v. Cox,* 246 N.C. 528, 98 S.E. 2d 879; *Griffin v. Griffin,* 237 N.C. 404, 75 S.E. 2d 133. The trial judge, who has the opportunity to see and hear the parties and the witnesses, is vested with broad discretion in cases involving custody of children. *Swicegood v. Swicegood,* 270 N.C. 278, 154 S.E. 2d 324; *Hinkle v. Hinkle,* 266 N.C. 189, 146 S.E. 2d 73; *Griffin v. Griffin, supra.* The welfare of the child is the paramount consideration which must guide the Court in exercising this discretion. Thus, the trial judge's concern is to place the child in an environment which will best promote the full development of his physical, mental, moral and spiritual faculties. *Stanback v. Stanback, supra; Thomas v. Thomas,* 259 N.C. 461, 130 S.E. 2d 871; *Griffith v. Griffith,* 240 N.C. 271, 81 S.E. 2d 918; *Tyner v. Tyner,* 206 N.C. 776, 175 S.E. 144.

[2]   The entry of an Order in a custody matter does not finally determine the rights of parties as to the custody, care and control of a child, and when a substantial change of condition affecting the child's welfare is properly established, the Court may modify prior custody decrees. G.S. 50-13.7; *Teague v. Teague,* 272 N.C. 134, 157 S.E. 2d 649; *In re Herring,* 268 N.C. 434, 150 S.E. 2d 775; *Stanback v. Stanback, supra; Thomas v. Thomas, supra; In re Means,* 176 N.C. 307, 97 S.E. 39. However, the modification of a custody decree must be supported by findings of fact based on competent evidence that there has been a substantial change of circumstances affecting the welfare of the child, and the party moving for such modification assumes the burden of showing such change of circumstances. *Shepherd v. Shepherd,* 273 N.C. 71, 159 S.E. 2d 357; *Crosby v. Crosby,* 272 N.C. 235, 158 S.E. 2d 77; and *Williams v. Williams,* 261 N.C. 48, 134 S.E. 2d 227. These rules of law must be applied in conjunction with the well-established principle that the trial judge's findings of fact in custody Orders are binding on the appellate courts *if supported by competent evidence. Teague v. Teague, supra; Thomas v. Thomas, supra;* see also, G.S. 1A-1, Rule 52(c).

[3]   In instant case, the modification of the prior decree of custody was primarily based on the finding that the child Robert Harry Blackley, Jr. " . . . is old enough to understand

the impropriety of Mr. Daniel's antenuptial sojourns in the home of plaintiff respondent and *to resent the same;* that the knowledge and recognition of these improprieties and the chastisement by his stepfather *adversly affect him and will continue to do so . . . . "* (Emphasis ours.)

We think that there was sufficient evidence to support a finding that the child Robert Harry Blackley, Jr. was old enough to recognize the impropriety of the premarital nighttime visits by plaintiff's present husband. However, under the circumstances of this case, we do not think that such conduct, standing alone, is sufficient to support a modification of the custody decree. It is only one circumstance to be considered by the trial court. This record otherwise clearly reveals that plaintiff was a mother who was intensely interested in her children's education, spiritual growth and physical welfare. Her success is reflected in the testimony of her pastor, her neighbors, her children's teachers, and the testimony of the defendant himself that he always found the children to be "neat, clean, mannerly, polite and courteous." The ultimate expression of her fitness to retain custody of her children is reflected in her son's testimony that, "I know that my Mother loves me and my sister."

We find nothing in this record which supports the very critical finding of resentment on the part of Robert toward his mother and stepfather or, "that the knowledge and recognition of these improprieties and the chastisement by his stepfather adversely affect him (Robert Harry Blackley, Jr.) and will continue to do so."

It is true that Robert, testifying for defendant, confirmed the premarital nighttime visits by his stepfather. However, he further testified that he had been camping and fishing with Don and that, "We had a good time. Don makes model airplanes with me and we have a good time doing that."

In regard to the chastisement by his stepfather, Robert testified, "Don has spanked me for different things. It was only a few times . . . . On occasion Don has popped me on my bottom and every now and then he would pop my little sister. Every now and then people make mistakes and they get popped on the bottom . . . . Don has never mistreated me and my Mother has never mistreated me."

We think that Robert's testimony discloses a comradeship and respect for his stepfather often not enjoyed by natural par-

ents. This record pictures two well-adjusted children who have been well cared for by a loving mother who is deeply interested in their total welfare.

The Court of Appeals correctly held that the evidence is insufficient to show change of circumstances affecting the welfare of the child so as to justify a modification of the prior Order awarding custody to the mother.

The decision of the Court of Appeals vacating the Order of 5 June 1972, is

Affirmed.