CHARLES R. HASSELL, JR. v. LORRAINE H. MEANS

No. 7910DC182

(Filed 7 August 1979)

1. **Divorce and Alimony § 23.8; Husband and Wife § 11.2— child custody — suffi-
ciency of separation agreement**

    A separation agreement was sufficient to establish permanent custody of
    the children with defendant wife, especially where a divorce decree and the
    conduct of the parties over a period of six years confirmed that custody was in
    fact vested in defendant.

2. **Divorce and Alimony § 25.10; Infants § 6.2— change in child custody — insuffi-
cient showing of changed circumstances**

    There was no sufficient change of circumstances to warrant a change in
    the custody of minor children from their mother to their father where the
    court found only that the children had obtained more maturity, the distance
    between the parties had been increased so that the father's ability to visit
    them had been greatly changed, and each party had remarried.

    Judge MITCHELL concurring.

APPEAL by defendant from *Parker, Judge.* Judgment entered
4 October 1978 in District Court, WAKE County. Heard in the
Court of Appeals 29 June 1979.

This action was instituted by plaintiff in August 1978. Plain-
tiff sought an award of custody of two children born to him and
defendant, his former wife. Plaintiff alleged: that he and defend-
ant entered into a separation agreement in June 1975 providing
that the children would reside with defendant subject to liberal
visitation with plaintiff and that plaintiff would pay child support
to defendant; that plaintiff and defendnat were divorced in July
1975; that in December 1976, defendant and her new husband
moved from Chapel Hill to Georgia; that plaintiff and defendant
have always contemplated that the wishes of the children would
be honored when they became old enough to express a desire as
to their living arrangements; that there has been a substantial

change of circumstances since execution of the separation agreement; and that it would be in the children's best interest to award custody to plaintiff.

Defendant answered, denying that the best interest of the children would be served by awarding custody to plaintiff, and alleged that the terms of the separation agreement, which was incorporated into the divorce decree, are binding on the parties.

Prior to trial, the judge conferred separately with plaintiff, defendant, and the two children. At trial (non-jury), plaintiff's evidence tended to show: that he and defendant separated in 1972; that defendant moved to Chapel Hill and went to law school where she remained in November 1975; that plaintiff paid child support and visited his children every other weekend during this time; that in June 1975, plaintiff and defendant entered into a separation agreement which provides for custody and child support.

Plaintiff's evidence tended to show further that plaintiff and defendant were divorced in July 1975; the divorce decree providing the following:

"VI. The parties have entered into a Separation Agreement, thereby providing for the division of their real and personal property and further providing for adjustment of their obligations each to the other, and for custody and support of the minor children born of the marriage.

NOW THEREFORE, IT IS HEREBY ORDERED, DECREED AND ADJUDGED:

. . .

2. The terms and conditions contained in that certain Separation Agreement existant [sic] between plaintiff and defendant dated June 20, 1975 are incorporated herein by reference as fully as if set out."

Plaintiff's evidence tended to show further: that in April 1976, plaintiff's and defendant's son, then seven years old, wrote to plaintiff that he would like at sometime in the future to live with him, and the son advised defendant; that in December 1976 after learning of defendant's intention to move to Georgia, plaintiff wrote defendant that he would like for them to agree in

writing that the children would visit him for Christmas and during the summers and that should the children choose to reverse the situation, their wishes would be respected; that defendant responded that the written separation agreement was sufficient and binding, but that when the children reached an age of greater maturity and reasonableness, she would not engage in legal attempts to force them to reside primarily with her should they desire to do otherwise; that defendant and her new husband moved to Cairo, Georgia in December 1976 where they practiced law together; that the children spent Christmas 1976, summer 1977, February 1978, and summer 1978 with plaintiff in Raleigh; that plaintiff remarried in July 1978; that his new wife is one of his law partners and had been living with him for approximately a year before their marriage; that plaintiff resides in a large house on Midway Plantation in Wake County, which he rents; that should plaintiff be granted custody, the children will ride the bus to a nearby school; that Mr. Silver, who is disabled and retired, is available to baby-sit in the afternoons after school until either plaintiff or his wife returns home; that plaintiff and his wife intend to adjust their schedules so that one of them will usually be home in the afternoons; that plaintiff has spent considerable time with his children in various activities, and the children have many friends in Raleigh whom they visit; that plaintiff has not taken the children to church, but would do so if they expressed a desire to go; that plaintiff and his new wife have a loving, open relationship with the children and have discussed all aspects of this case with them; that plaintiff believes in communicating openly with the children about the situation; that plaintiff did not instigate the change of the custody decision made by the children, but supports it since that is what makes them happy; that when informed by his children of their decision in July 1978, plaintiff told them to think about it and to call defendant and tell her if they were sure; that the children did call defendant and wrote her several letters; and the children became upset and confused when defendant refused to respect their wishes.

Defendant and her husband testified that: they were shocked when their children indicated a desire to live in Raleigh, because before going to Raleigh for the summer, the children had made extensive plans for the school year in Georgia; the children made

the decision only fifteen days after their arrival in Raleigh and wrote several ugly letters to defendant; the children had never acted this way toward defendant before; defendant was quite upset, but agreed to respect the children's wishes if they would return to Georgia for a visit first; plaintiff refused, and filed this action instead; on two occasions, plaintiff has used the children to demand concessions from defendant by refusing to return them to Georgia unless defendant agreed to a reduction in child support to $250 per month and promised not to seek a custody decree in Georgia; defendant agreed to the child support reduction and never intended to seek a custody decree in Georgia, because she did not want to involve the children in a legal action; she never discussed the custody situation with the children, because she did not want to involve them in adult problems; she believes the children are too young to be allowed to make this kind of decision; she and her husband have always had a loving relationship with the children; they reside in a large, two-story house in a good neighborhood next door to the children's school; defendant and her husband practice law together in a new office building, which they built very close to their home and the school; defendant's husband became a Boy Scout leader so that defendant's son would have a troop to join; defendant's daughter takes ballet lessons; defendant and her husband are active in church and take the children regularly; the children are required to clean their rooms and to take out the trash as chores; and the children are doing well in school.

Defendant's church pastor testified; and various neighbors of defendant's and the children's teachers presented affidavits attesting to the loving relationship between defendant and her husband and the children, to the high quality of the children's home and surroundings, and to the children's good progress and adjustment in school and with other children.

Defendant's sister testified that on the one occasion when she visited the children at plaintiff's home, she found the house dark and dismal and found Mr. Silver to be intoxicated.

The trial court, in its order, made extensive findings of fact and conclusions of law and entered its order, which provides in part:

"2. That both parties hereto are fit and proper persons to have custody of the minor children, Kathryn Bonner Hassell and Charles Roberson Hassell, III.

3. That the plaintiff shall have primary custody of the children and the defendant shall have liberal visitation rights.

DEFENDANT'S EXCEPTION NO. 55

4. The defendant shall be entitled to have the minor children visit with her in Georgia eight to ten weeks in the summer, during Thanksgiving, Christmas 1979, and alternating Christmases thereafter, and spring school breaks, provided however that in even-numbered years, defendant has the right to visit in North Carolina with the children from Christmas Day at 3:00 p.m. until December 29th at 3:00 p.m."

Defendant appealed.

*Gulley, Barrow & Boxley, by Jack P. Gulley, for plaintiff appellee.*

*W. Brian Howell and Michael D. Levine, for defendant appellant.*

ERWIN, Judge.

[1]  The defendant contends that:

"The court committed error, in concluding, as a matter of law, that custody of the children was not determined by the Separation Agreement of June 20, 1975, between the parties, because the Separation Agreement, the Judgment of Divorce, and the conduct by and between the parties over a period exceeding six years confirms that custody was in fact vested in the defendant-appellant."

We agree with defendant.

That portion of the separation agreement relating to custody of the minor children of the parties is not artfully drafted; however, we hold that the agreement is sufficient to establish permanent custody of the children with defendant. That part of the separation agreement provides:

"(Custody)

7. The parties hereto having agreed upon the custody and support of the minor children born of the marriage, hereby covenant and stipulate, each with the other as follows:

> a. It is stipulated and agreed that both party of the first part and party of the second part are fit and proper persons to have custody of the minor children born of the marriage of the parties. It is agreed that the said minor children born of the marriage of the parties presently reside with the party of the second part, (Lorraine H. Hassell Means) subject to reasonable visitation privileges. It is further provided that in the event the residences should change such that they are separated by a distance of more than 150 miles, the parties agree to arrange specific periods of visitation, including the summer months and Thanksgiving, Easter and Christmas."

In addition, the following was provided with reference to child support:

> "[A]t such time as party of the second part completes her legal education and is admitted to the practice of law, or alternatively remarries, the monies paid for the support and maintenance of the minor children born of the marriage shall be reduced and the sum paid by party of the first part to party of the second part for support and maintenance of the said minor children shall be THREE HUNDRED FIFTY DOLLARS ($350.00) per month. Said payment shall continue until such time as the said children attain majority or are otherwise emancipated. Provided, however, that upon the attainment of majority or emancipation of either of the children born of the marriage of the parties, the child support payment provided herein shall be prorately reduced and shall thereafter continue at the lower rate until the attainment of majority or emancipation of the other child born of the marriage of the parties."

The whole tenor of these portions of the agreement suggests a long period of time including "that in the event the residences

should change such that they are separated by a distance of more than 150 miles, the parties agree to arrange specific periods of visitation, including the summer months and Thanksgiving, Easter and Christmas." There is not any language suggesting that the children would not live with defendant. To us, the provisions for support are also permanent: "Said payment shall continue until such time as the said children attain majority or are otherwise emancipated." The agreement does not provide for any change of living conditions other than visitation.

The terms worked out by the parties were incorporated in the divorce decree as set out above. To us, this implies that the court approved the terms, although the court did not enter an order that they be performed. This adds further to defendant's contentions that the agreement relating to custody is permanent in nature.

We note that this agreement has been followed by the parties since June 1975. For the trial court to treat this agreement in the manner it did at this late date will discourage parties from entering into custody agreements. Parents are in a better position on most occasions to provide custody arrangements for their children as here. We hold this assignment of error has merit.

[2] Defendant contends that plaintiff, the moving party, has the burden of showing that there has been a substantial change of circumstances affecting the welfare of his children, and he has failed to meet such burden. Plaintiff contends that the court was correct when it concluded that there had been a substantial change in the circumstances since the entry of the separation agreement.

In *Blackley v. Blackley*, 285 N.C. 358, 362, 204 S.E. 2d 678, 681 (1974), our Supreme Court held as follows:

"The entry of an Order in a custody matter does not finally determine the rights of parties as to the custody, care and control of a child, and when a substantial change of condition affecting the child's welfare is properly established, the Court may modify prior custody decrees. G.S. 50-13.7; *Teague v. Teague*, 272 N.C. 134, 157 S.E. 2d 649; *In re Herring*, 268 N.C. 434, 150 S.E. 2d 775; *Stanback v. Stanback*, *supra*; *Thomas v. Thomas*, *supra*; *In re Means*, 176 N.C. 307, 97 S.E. 39. However, the modification of a custody decree

must be supported by findings of fact based on competent evidence that there has been a substantial change of circumstances affecting the welfare of the child, and the party moving for such modification assumes the burden of showing such change of circumstances. *Shepherd v. Shepherd,* 273 N.C. 71, 159 S.E. 2d 357; *Crosby v. Crosby,* 272 N.C. 235, 158 S.E. 2d 77; and *Williams v. Williams,* 261 N.C. 48, 134 S.E. 2d 227. These rules of law must be applied in conjunction with the well-established principle that the trial judge's findings of fact in custody Orders are binding on the appellate courts *if supported by competent evidence. Teague v. Teague, supra; Thomas v. Thomas, supra;* see also, G.S. 1A-1, Rule 52(c)."

The trial court concluded as a matter of law (in part) as follows:

"That although the separation agreement did not give either party custody, there have been substantial changes in circumstances since the execution of said agreement in that the children have obtained more maturity, the distance between the parties has been increased to such an extent that the ability of the children to see the plaintiff has been greatly changed and each party has remarried."

Two of the changes of circumstances are mutual. Each party has remarried. Remarriage in and of itself is not a sufficient change of circumstance to justify modification of a child custody order. *See King v. Allen,* 25 N.C. App. 90, 212 S.E. 2d 396, *cert. denied,* 287 N.C. 259, 214 S.E. 2d 431 (1975). The distance between the parties has been increased to such an extent that the ability of the children to see the plaintiff has been greatly changed. However, the distance would be the same for either party who has visitation rights to see the children. *See Searl v. Searl,* 34 N.C. App. 583, 239 S.E. 2d 305 (1977). To us, it is obvious that growing children will "obtain more maturity." As used in G.S. 50-13.7, "changed circumstances" means such a change as affects the welfare of the child. *In re Harrell,* 11 N.C. App. 351, 181 S.E. 2d 188 (1971). We fail to find a sufficient change of circumstances within the meaning of G.S. 50-13.7 to warrant or justify a change in the custody of the children in this case.

"A child's preference as to who shall have his custody is not controlling; however, the trial judge should consider the wishes of

a ten-year-old child in making his determination." *In re Custody of Stancil*, 10 N.C. App. 545, 548, 179 S.E. 2d 844, 846 (1971).

Judgment reversed.

Judge PARKER concurs.

Judge MITCHELL concurring.

During oral arguments before us in this case, we were informed by counsel for both parties that the defendant and her husband changed their circumstances by moving to North Carolina and entering the practice of law here after the entry of the judgment of the trial court before us on appeal. This change in the circumstances of the parties could not, of course, have been made known to or considered by the trial court and is not reflected in the record before us. Although I concur in the opinion in this case, I would additionally point out that nothing in the opinion should be construed as limiting the right of either party to return to the trial court in an effort to show changed circumstances arising after the entry of the trial court's order of 4 October 1978 and affecting the welfare of the minor children of the parties. *See Thomas v. Thomas*, 259 N.C. 461, 130 S.E. 2d 871 (1963); *Blankenship v. Blankenship*, 256 N.C. 638, 124 S.E. 2d 857 (1962); *Owen v. Owen*, 31 N.C. App. 230, 229 S.E. 2d 49 (1976).