APRIL SHIPMAN v. CASEY SHIPMAN

No. 71A03

(Filed 2 October 2003)

**1. Child, Support, Custody, and Visitation— custody—change of circumstances—findings**

The evidence in a child custody proceeding supported ten findings concerning substantial changes in circumstances affecting the welfare of the child. The findings involved the mother moving frequently; moving herself and the child in with her boyfriend; working deceitfully to deprive defendant of visitation; allowing the child to stay in her mother's home, where she had been molested; and initiating a spiteful criminal action against defendant's mother. Although a judge in the Court of Appeals thought that the trial court failed to make findings of fact as to how the change of circumstances affected the welfare of the child, those effects are self-evident in this case.

**2. Child Support, Custody, and Visitation— custody—change of circumstances—conclusion supported by findings**

A trial court's conclusion in a child custody order that a substantial change in circumstances affected the welfare of the child supported the findings. The trial court was satisfied that the child's welfare had been adversely affected by defendant's failure to pay adequate child support, plaintiff's failure to provide a stable home environment, plaintiff's failure to ensure that defendant was accorded visitation, and plaintiff's failure to institute or sustain contact with defendant's family. Defendant's new employment, new house, and impending marriage were properly considered as changes likely to have a beneficial effect.

**3. Child Support, Custody, and Visitation— custody—change of circumstances—best interest of child**

The trial court did not err by deciding that a change of circumstances warranted a modification of a child custody order. The court considered the significance of the changes and the effects of those changes and concluded that the best interests of the child would be promoted by a change in custody. Trial courts are encouraged to pay particular attention in their findings to explaining whether any change in circumstances can be deemed substantial, whether that change affected the welfare

of the minor child, and why modification is in the child's best interests.

Justice ORR dissenting.

Justice PARKER joins in the dissenting opinion.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 155 N.C. App. 523, 573 S.E.2d 755 (2002), affirming an order entered 5 October 2001 by Judge Laura J. Bridges in District Court, Henderson County. Heard in the Supreme Court 6 May 2003.

*Wade Hall for plaintiff-appellant.*

*Edwin R. Groce; and Bazzle & Carr, P.A., by Eugene M. Carr III, for defendant-appellee.*

BRADY, Justice.

The dispositive issue before this Court is whether the trial court's findings of fact were adequate to support its conclusion of law that a substantial change in circumstances warranted a modification of the custody arrangement regarding the parties' minor child. A divided panel of the Court of Appeals concluded that the trial court's findings of fact supported its conclusion of law. For the reasons stated below, we affirm the decision of the Court of Appeals.

On 5 October 1999, April Shipman (plaintiff) and Casey Shipman (defendant) entered into a post-separation consent order, in which the parties agreed to the joint custody of their only child, Spencer. The order also granted plaintiff primary care, physical custody, and control of the parties' minor child, and established visitation for defendant. In addition, defendant was required to pay $110.00 per week in child support.

In May 2001, defendant moved for sole custody of Spencer, alleging that "a material change" in circumstances had occurred and that such a change had affected the child's welfare. Defendant also admitted that his child support obligation was in arrearage and requested that the trial court vacate his support obligations if he agreed to pay the arrearage. In support of his motion seeking sole custody, defendant alleged that plaintiff's relationship with her boyfriend, Christopher Vaughn, created abusive and neglectful living conditions that were not in Spencer's best interests. Defendant also alleged that

plaintiff had denied defendant any visitation with the child in violation of the 5 October 1999 consent order. Plaintiff denied defendant's allegations and requested that the trial court hold defendant in contempt for his failure to pay child support in accordance with the consent order.

After a hearing on the matter, the trial court concluded that a substantial change of circumstances affecting Spencer's welfare had occurred during the nineteen-month period between the date of the original consent order and defendant's motion for sole custody. Consequently, the trial court ordered that defendant, rather than plaintiff, be granted primary care, physical custody, and control of the minor child. The trial court also established a visitation schedule for plaintiff and ordered her to pay child support based on her earnings. Plaintiff was additionally awarded a child support credit of $5,853.22, the amount of defendant's child support arrearage at the time of the hearing.

Plaintiff's arguments to this Court can be summarized as follows: The Court of Appeals erred in concluding that (1) the trial court's findings of fact were supported by competent evidence; (2) the trial court's findings of fact were adequate to support its conclusion that a material change in circumstances affecting Spencer's welfare had been established; and (3) the trial court did not abuse its discretion in ordering that defendant be given primary care, physical custody, and control of the minor child. Plaintiff additionally argues that the Court of Appeals erred in determining that trial court's decision to modify the parties' child support obligations was premised on substantial supporting evidence.

It is well established in this jurisdiction that a trial court may order a modification of an existing child custody order between two natural parents if the party moving for modification shows that a " 'substantial change of circumstances affecting the welfare of the child' " warrants a change in custody. *Pulliam v. Smith,* 348 N.C. 616, 619, 501 S.E.2d 898, 899 (1998) (quoting *Blackley v. Blackley,* 285 N.C. 358, 362, 204 S.E.2d 678, 681 (1974)); *see also* N.C.G.S. § 50-13.7(a) (2001) (establishing that custody orders "may be modified or vacated at any time, upon motion in the cause and a showing of changed circumstances by either party"). The party seeking to modify a custody order need not allege that the change in circumstances had an adverse effect on the child. *Pulliam,* 348 N.C. at 619, 501 S.E.2d at 899. While allegations concerning adversity are "acceptable factor[s]" for the trial court to consider and will support modification, "a show-

ing of a change in circumstances that is, or is likely to be, beneficial to the child may also warrant a change in custody." *Id.* at 620, 501 S.E.2d at 900.

As in most child custody proceedings, a trial court's principal objective is to measure whether a change in custody will serve to promote the child's best interests. *In re Custody of Peal*, 305 N.C. 640, 645-46, 290 S.E.2d 664, 667-68 (1982); *see also In re Lewis*, 88 N.C. 31, 34 (1883) (noting that "the welfare of the infants themselves is the polar star by which the discretion of the courts is to be guided"). Therefore, if the trial court does indeed determine that a substantial change in circumstances affects the welfare of the child, it may only modify the existing custody order if it further concludes that a change in custody is in the child's best interests. *Pulliam*, 348 N.C. at 629-30, 501 S.E.2d at 905-06 (Orr, J., concurring).

The trial court's examination of whether to modify an existing child custody order is twofold. The trial court must determine whether there was a change in circumstances and then must examine whether such a change affected the minor child. If the trial court concludes either that a substantial change has not occurred or that a substantial change did occur but that it did not affect the minor child's welfare, the court's examination ends, and no modification can be ordered. If, however, the trial court determines that there has been a substantial change in circumstances and that the change affected the welfare of the child, the court must then examine whether a change in custody is in the child's best interests. If the trial court concludes that modification is in the child's best interests, only then may the court order a modification of the original custody order.

When reviewing a trial court's decision to grant or deny a motion for the modification of an existing child custody order, the appellate courts must examine the trial court's findings of fact to determine whether they are supported by substantial evidence. *Pulliam*, 348 N.C. at 625, 501 S.E.2d at 903. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980).

Our trial courts are vested with broad discretion in child custody matters. *Pulliam*, 348 N.C. at 624, 501 S.E.2d at 902. This discretion is based upon the trial courts' opportunity to see the parties; to hear the witnesses; and to " 'detect tenors, tones, and flavors that are lost in the bare printed record read months later by appellate judges,' "

*Surles v. Surles*, 113 N.C. App. 32, 37, 437 S.E.2d 661, 663 (1993) (quoting *Newsome v. Newsome*, 42 N.C. App. 416, 426, 256 S.E.2d 849, 855 (1979)), *quoted in Pulliam*, 348 N.C. at 625, 501 S.E.2d at 903. Accordingly, should we conclude that there is substantial evidence in the record to support the trial court's findings of fact, such findings are conclusive on appeal, even if record evidence " 'might sustain findings to the contrary.' " *Pulliam*, 348 N.C. at 625, 501 S.E.2d at 903 (quoting *Williams v. Pilot Life Ins. Co.*, 288 N.C. 338, 342, 218 S.E.2d 368, 371 (1975)).

In addition to evaluating whether a trial court's findings of fact are supported by substantial evidence, this Court must determine if the trial court's factual findings support its conclusions of law. *Id.* at 628, 501 S.E.2d at 904. With regard to the trial court's conclusions of law, our case law indicates that the trial court must determine whether there has been a substantial change in circumstances and whether that change affected the minor child. Upon concluding that such a change affects the child's welfare, the trial court must then decide whether a modification of custody was in the child's best interests. If we determine that the trial court has properly concluded that the facts show that a substantial change of circumstances has affected the welfare of the minor child and that modification was in the child's best interests, we will defer to the trial court's judgment and not disturb its decision to modify an existing custody agreement. *Id.*

[1] In the child custody order in the instant case, the trial court set out ten findings of fact in support of its conclusion that defendant had demonstrated that "a substantial change in circumstance[s] affecting the welfare of the minor child" had occurred. An examination of the trial court's summary of the evidence and enumerated findings of fact indicates that certain evidence played a crucial role in its determination that a substantial change in circumstances had occurred between the time of the original consent order and the date that defendant moved for sole custody.

A brief summary of the pivotal circumstances set out in the trial court evidentiary summary and findings of fact, as they relate to our analysis, follows. Regarding plaintiff, the trial court noted that although she had been a good mother and had provided good day-to-day care for the minor child, plaintiff: (1) moved frequently since the time of the original custody order; (2) had no home of her own at the time of the hearing; (3) demonstrated "instability" by moving often and not maintaining a home of her own; (4) violated the original cus-

**SHIPMAN v. SHIPMAN**

[357 N.C. 471 (2003)]

tody order by moving in with her boyfriend, Vaughn, with her minor child present; (5) further violated the original consent order by actively working to prevent defendant from visiting with the minor child, which included a failure to inform defendant of her address and telephone number; (6) used "deceit" in her efforts to deprive defendant of visitation; (7) allowed the minor child to stay in the home of plaintiff's mother, where plaintiff had previously been molested; and (8) initiated a "spiteful" criminal prosecution against Shelia Bishop, defendant's mother and the minor child's paternal grandmother.

The trial court found only one adverse circumstance regarding defendant—that defendant had violated the consent order by failing to pay child support. The trial court found that defendant had a good relationship with the minor child, that the minor child loved defendant, and that the child looked forward to visiting with defendant. The factual findings further revealed that defendant resided in a three-bedroom home, that he was to marry the day after the hearing, and that he could provide for the minor child. The trial court also found that defendant's fiancée, Kelly Squirer, had a child near the age of Spencer and could provide defendant with assistance in caring for the child.

Our review of the record discloses that substantial evidence supported each of the trial court's relevant findings of fact. It was undisputed that plaintiff moved numerous times and often stayed in others' homes since the time of the original custody order. In addition, plaintiff did not deny she had left Spencer in the care of her mother, once for a period of up to ten days, in a location where she had been molested. The above-noted evidence unequivocally supports the trial court's characterization of plaintiff's living arrangements as unstable.

Furthermore, it was undisputed that plaintiff moved in with her boyfriend, Vaughn. Vaughn testified that the two lived together for a four-month period. Although testimony varied as to the precise dates and conditions of the living arrangement between plaintiff and Vaughn, the evidence showed that Spencer lived with the couple during the four-month period and even shared a bedroom with them for a time.

Moreover, evidence in the record supports the trial court's findings as to plaintiff's "deceit" in hiding her whereabouts from defendant as a means of preventing him from visiting with the child. At the hearing, plaintiff was elusive when questioned about her failure to

provide timely notice of address and telephone changes. The evidence tended to show that plaintiff had employed a variety of strategies aimed at concealing her and Spencer's whereabouts from defendant.

The trial court's finding as to plaintiff's deceit was also supported by another finding, that plaintiff filed a "spiteful" criminal action against defendant's mother. Evidence in the record established that plaintiff failed to appear in court to prosecute the action. Additional evidence indicated that plaintiff had previously sought a domestic violence protective order against defendant, which was later dismissed when plaintiff failed to appear in court. Hearing testimony suggested that the protective order may have been filed, not to protect plaintiff from defendant or his threats, but rather as another means to distance herself and her child from defendant. Admittedly, the trial court did not include a reference to plaintiff's filing a domestic violence protective order against defendant in its findings of fact. Nevertheless, the fact that plaintiff sought a protective order against defendant under questionable circumstances was further evidence to support the trial court's characterization of the warrant filed against defendant's mother as "spiteful."

We conclude that adequate evidence supports the trial court's finding that defendant had failed to abide by his child support obligations. Defendant did not dispute the fact that he was in arrears at the time of the hearing or that his arrearage totaled $5,853.22. We acknowledge that the trial court did not include a finding that defendant also lived with his girlfriend during the period in question. However, defendant's testimony revealed that the minor child did not spend the night in defendant's home under such conditions. It would appear that the trial court did not consider defendant's living arrangements a violation of the original consent order, which forbade either party from having "non-familial overnight guests of the opposite sex in the presence of the minor child." Because defendant's cohabitation did not violate the original order and, more important, because defendant's cohabitation could not have affected the minor child, we presume that the trial court did not consider the cohabitation a substantial change in circumstances affecting the minor child. *See Browning v. Helff*, 136 N.C. App. 420, 524 S.E.2d 95 (2000) (concluding that a parent's cohabitation alone does not constitute a substantial change in circumstances affecting the minor child).

The judge dissenting in the Court of Appeals was of the opinion that the trial court's order was incomplete in that the trial court failed

to make findings of fact as to how the change of circumstances affected the welfare of the minor child. *Shipman v. Shipman*, 155 N.C. App. 523, 531, 573 S.E.2d 755, 760 (2002) (Walker, J., dissenting). As our appellate case law has previously indicated, before a child custody order may be modified, the evidence must demonstrate a connection between the substantial change in circumstances and the welfare of the child, and flowing from that prerequisite is the requirement that the trial court make findings of fact regarding that connection. *See Carlton v. Carlton*, 145 N.C. App. 252, 262, 549 S.E.2d 916, 923 (Tyson, J., dissenting) (emphasizing the importance of a trial court's factual findings as to any effect that a change in circumstances might have on the minor child), *rev'd per curiam per dissent*, 354 N.C. 561, 557 S.E.2d 529 (2001), *cert. denied*, 536 U.S. 944, 153 L. Ed. 2d 811 (2002); *see also* 3 Suzanne Reynolds, *Lee's North Carolina Family Law* § 13.103 (5th rev. ed. 2002) [hereinafter *Lee's Family Law*] (noting that the moving party must prove what the treatise author refers to as a "nexus" between the changed circumstances and the welfare of the child). In situations where the substantial change involves a discrete set of circumstances such as a move on the part of a parent, *Carlton*, 145 N.C. App. 252, 549 S.E.2d 916; a parent's cohabitation, *Browning*, 136 N.C. App. 420, 524 S.E.2d 95; or a change in a parent's sexual orientation, *Pulliam*, 348 N.C. 616, 501 S.E.2d 898, the effects of the change on the welfare of the child are not self-evident and therefore necessitate a showing of evidence *directly* linking the change to the welfare of the child. *See generally Lee's Family Law* § 13.103 (discussing cases in which our appellate courts have required a showing of specific evidence linking the change in circumstances to the welfare of the child). Other such situations may include a remarriage by a parent or a parent's improved financial status. Evidence linking these and other circumstances to the child's welfare might consist of assessments of the minor child's mental well-being by a qualified mental health professional, school records, or testimony from the child or the parent. *See, e.g., Carlton*, 145 N.C. App. at 262, 549 S.E.2d at 923 (Tyson, J., dissenting) (noting that the trial court relied upon a psychiatric assessment of the child, the child's record of school absentees, and the child's poor school performance to assess the effects of a parent's move on the welfare of the child); *MacLagan v. Klein*, 123 N.C. App. 557, 562, 473 S.E.2d 778, 782-83 (1996) (affirming modification where the child's therapist testified that the child was experiencing emotional and physical difficulties as a result of moving with custodial parent to a new community where the child was being taught

religious beliefs that conflicted with the beliefs the child learned prior to the move), *disc. rev. denied*, 345 N.C. 343, 483 S.E.2d 170 (1997), *and overruled on other grounds by Pulliam*, 348 N.C. 616, 501 S.E.2d 898.

While, admittedly, the trial court's findings of fact do not present a level of desired specificity, the court's factual findings were sufficient for our review, given the circumstances in the instant case. Unlike the facts presented by the cases noted *supra*, the effects of the substantial changes in circumstances on the minor child in the present case are self-evident, given the nature and cumulative effect of those changes as characterized by the trial court in its findings of fact. Most notable is the effect of plaintiff's deceitful denial of visitation to defendant. We recognize that our appellate courts have previously stated that, generally, interference *alone* by the custodial parent with the noncustodial parent's visitation rights does not justify a modification of a child custody order. *See, e.g., Woncik v. Woncik*, 82 N.C. App. 244, 248, 346 S.E.2d 277, 279 (1986). In the instant case, however, the trial court's findings of fact reflected far more than the mere interference with defendant's visitation rights, warranting the court's intervention. As noted *supra*, the trial court characterized the child's relationship with defendant, his father, as a good relationship and further found that the child looked forward to seeing defendant. The trial court's findings indicate that the denial of defendant's visitation was deceitful and more than simply an interference or frustration with his rights, as it encompassed a considerable period. *See id.* (holding that where "interference [with visitation] becomes so pervasive as to harm the child's close relationship with the noncustodial parent, there can be a conclusion drawn that the actions of the custodial parent show a disregard for the best interests of the child, warranting a change of custody"). Furthermore, denying the minor child visitation with a loving father was coupled with an unequivocally unstable home life created by plaintiff's often transient living arrangements. Given our review of the trial court's factual findings, we cannot agree with the dissenting Court of Appeals' judge that the findings failed to establish that the change in circumstances had any effect on the minor child.

In sum, we conclude that there was substantial underlying evidence to support each of the trial court's ten findings of fact pertaining to whether there had been a substantial change in circumstances affecting the welfare of the minor child. As a result, we hold that the trial court's findings are conclusive on appeal.

**[2]** We must next determine whether the trial court's factual findings adequately support its conclusion of law that "a substantial change in circumstance[s] affecting the welfare of the minor child has occurred since the entry of the October 5, 1999 Order in this cause." The trial court's conclusion indicates its satisfaction that the minor child's welfare had been adversely affected by the following substantial changes in circumstances: (1) defendant's failure to pay adequate child support, which obviously resulted in denying the minor child the benefits that attach to such financial resources; (2) plaintiff's failure to provide a stable home environment, which resulted in denying the minor child the benefits of the security that attaches to a dependable and consistent home life; (3) plaintiff's failure to ensure that defendant was accorded his visitation opportunities, which resulted in denying the minor child the benefits of maintaining regular contact with his father; and (4) plaintiff's failure to initiate or sustain contact with defendant's family, including Spencer's paternal grandmother, which resulted in denying the minor child the benefits of access and contact with other members of his extended family. In our view, such findings provide adequate support for the trial court's initial conclusion that defendant had shown that "a substantial change in circumstance[s]" had occurred during the period following the original custody decree and that the change had affected the welfare of the minor child.

In addition to noting that a substantial change in circumstances had *adversely* affected the welfare of the minor child, the order also includes language indicating that the trial court considered changes in circumstances that could positively affect the circumstances of the minor child. *See Pulliam,* 348 N.C. at 620, 501 S.E.2d at 900 (holding that "a showing of a change in circumstances that is, or is likely to be, beneficial to the child may also warrant a change in custody"). In finding of fact number nine (finding 9), the trial court stated that "[d]efendant and Kelly Squirer have a three bedroom home, can provide for the child, Kelly Squirer has a four year old son and can help with the child." The evidence and testimony at the hearing showed that finding 9 was the culmination of a series of developments that occurred after the original custody decree. Defendant secured new employment, he began a relationship with Squirer, and the two bought a house together. Other testimony indicated that the two planned to marry immediately following the modification hearing and that both were employed. Thus, there is ample evidence to support the trial court's factual finding, and we conclude that the court properly considered finding 9 as an additional showing of a substantial

change in circumstances that would likely have a beneficial effect on the welfare of the minor child.

[3] We next examine whether the trial court erred by deciding that such a change of circumstances warranted a modification of the original custody order. Upon determining that a substantial change in circumstances affecting the welfare of the minor child occurred, a trial court must then determine whether modification would serve to promote the child's best interests. *Peal*, 305 N.C. at 645-46, 290 S.E.2d at 667-68. In the case at bar, the trial court considered the significance of the changes in circumstances and the effects of those changes on Spencer, and expressly concluded that "the best interest[s] of the minor child would be materially and essentially promoted" by a change in custody. Consequently, the trial court ordered a modification of the original custody agreement, granting defendant "[p]rimary care, custody[,] and control of the child."

We note that although the content of the trial court's order in the instant case is adequate for our review, the lack of specificity in the order, particularly concerning the findings of fact as to the effect of the changes in circumstances on the child's welfare, has made our review far more difficult. Given different factual circumstances, a slightly more pervasive lack of specificity could necessitate our reversal of a modification order. To avoid further confusion, we would encourage trial courts, when memorializing their findings of fact, to pay particular attention in explaining whether any change in circumstances can be deemed substantial, whether that change affected the welfare of the minor child, and, finally, why modification is in the child's best interests.

The trial court's findings of facts are supported by substantial evidence, and these findings are adequate to support the trial court's conclusions of law. Those conclusions, in turn, justify the modification of the original child custody order, including those provisions relating to defendant's child support obligations. Therefore, this Court affirms the holding of the Court of Appeals and concludes, for the reasons stated in this opinion, that the trial court's decision to modify the original custody order complied with the applicable substantive and procedural law.

AFFIRMED.

Justice ORR dissenting.

I respectfully dissent from the majority opinion.

The majority acknowledges "the trial court's findings of fact do not present a level of desired specificity." Unfortunately, the majority then proceeds to draw its own factual determinations from the recitation of the evidence found in the trial court's order. While I acknowledge that there is evidence in the record to support a determination that circumstances have changed over the course of the approximate eighteen months between the original custody determination and the modification hearing, the trial court's findings do not show that the changes were substantial *and* that they affected the welfare of the child.

The majority acknowledges a series of eight "findings." None of these findings, however, directly address the effect of the changes on the minor child; it is only assumed by the majority that the change in circumstances affected the child.

As the majority notes, where "the effects of the change on the welfare of the child are not self-evident" it necessitates "a showing of evidence *directly* linking the change to the welfare of the child. *See generally Lee's Family Law* § 13.103 (discussing cases in which our appellate courts have required a showing of specific evidence linking the change in circumstances to the welfare of the child)."

Unfortunately, it is the majority that makes the requisite linkage between the substantial change in circumstances and the purported effect on the child, not the District Court Judge. Since whatever effects there may be—if any—are not "self-evident," this case should be reversed and remanded for additional findings of fact.

Justice PARKER joins in this dissenting opinion.