An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-107
NORTH CAROLINA COURT OF APPEALS

Filed: 15 July 2014

JOSHUA JORDAN MEDURI,
    Plaintiff-Appellant,

v.                                          Buncombe County
                                            No. 11 CVD 1038
NATASHA SERRAO MEDURI,
    Defendant-Appellee.


Appeal by Plaintiff from order entered 9 September 2013 by Judge Susan Dotson-Smith in District Court, Buncombe County. Heard in the Court of Appeals 3 June 2014.

> *Mary Elizabeth Arrowood for Plaintiff-Appellant.*

> *Emily Sutton Dezio, P.A., by Emily Sutton Dezio, for Defendant-Appellee.*


McGEE, Judge.


Joshua Jordan Meduri ("Plaintiff") and Natasha Serrao Meduri ("Defendant") were married on 12 December 2004. Two children were born of the marriage, Arella in 2006, and Aurora in 2008 ("the children"). Plaintiff and Defendant separated on 25 February 2010, and entered into a "Contract of Separation and Property Settlement Agreement" ("the agreement") on 29 October

2010. Plaintiff filed a complaint for divorce on 28 February 2011. The trial court entered a divorce judgment on 23 May 2011 ("the divorce"), and incorporated the agreement into the divorce judgment.

The section of the agreement on physical custody of the children states:

> PHYSICAL CUSTODY:
>
> A. [Plaintiff] shall have physical custody of the minor children and be entitled to placement at all times except when [Defendant] is entitled to visitation as below described:
>
> B. [Defendant] shall be entitled to visitation every other weekend from 6:00 p.m. Friday to 6:00 p.m. Sunday;
>
> C. Exchanges shall be at [Plaintiff's] residence;
>
> D. Such other arrangements [as] are mutually agreeable to [Plaintiff and Defendant].

Defendant filed a "Motion to Modify Custody Agreement" on 2 November 2012, and requested that the trial court award joint legal and physical custody of the children to Plaintiff and Defendant. At a hearing on 24 and 25 July 2013, the parties testified that, Plaintiff and Defendant maintained a flexible visitation schedule at times, as provided for under subsection D. of the agreement. Defendant testified that originally Plaintiff had physical custody, with Defendant having visitation

every other weekend from Friday evening to Sunday evening. From the date of separation until about a month prior to the divorce, Defendant testified she lived in a very small residence and the children only stayed overnight occasionally. Defendant worked as a wedding photographer, which made it difficult for Defendant to spend time with the children every other weekend. In 2011, Plaintiff attended school from mid-February through mid-June, which was both before and after the divorce. During that time, Defendant sometimes provided daytime care for Aurora, as well as afterschool care for both children. Plaintiff and Defendant agreed Defendant needed to be more consistent in visiting the children and needed to have a greater presence in the children's lives. Plaintiff testified that after Defendant's sporadic visitation during the summer of 2011, Plaintiff and Defendant agreed to a six-month trial period of visitation, with Defendant having visitation every Thursday and Friday nights.

Plaintiff and Defendant, along with the children's paternal and maternal grandparents, were Jehovah's Witnesses. During their marriage, Plaintiff and Defendant raised the children in that faith. After the divorce, Plaintiff remarried and had a child with his new wife in September 2011. Plaintiff began to separate himself from the Jehovah's Witness religion, and began to attend the Universal Unitarian Church with his second wife.

Plaintiff and Defendant discussed Plaintiff's change in religion. They decided the children would participate in each parent's religion during each parent's time with the children. Plaintiff occasionally allowed Defendant to take the children to the Jehovah's Witness Kingdom Hall during Plaintiff's custodial time. Plaintiff testified they would eventually allow the children to choose the religion the children would follow. Plaintiff's religious change was not a problem between Plaintiff and Defendant, but it did cause a rift between Plaintiff and his mother. Plaintiff eventually decided he did not want the children to have any involvement with the Jehovah's Witness religion during his custodial time.

During spring break in April 2012, the children went on a trip with Defendant and the children's maternal grandparents. The children were not returned to Plaintiff on time, which caused Arella to miss some school. The grandparents said the children were returned late because the children were sick. There was a dispute about how, and if, Plaintiff had been informed the children would be returning late. After this incident, Plaintiff was no longer comfortable with the modified visitation schedule. In April 2012, Plaintiff and Defendant reverted to the original schedule set out in the agreement, with

Defendant having physical custody of the children every other weekend.

In Defendant's motion, she argued that Plaintiff's choice to revert to the more limited visitation schedule constituted a substantial change of circumstances, and warranted modification of the custody agreement. At that hearing, Defendant testified she was also concerned that Plaintiff had had the children vaccinated without first consulting her because, when Plaintiff and Defendant were married, they had decided the children would not be vaccinated.

The trial court entered a final custody order on 9 September 2013, and concluded there had been a material and substantial change in circumstances that affected the welfare of the children, and that modifying the prior custody order was in the best interests of the children. The trial court awarded joint physical and legal custody of the children to Plaintiff and Defendant. Plaintiff appeals.

*Motion to Strike*

We first address Defendant's "Motion to Strike" filed with this Court on 10 February 2014. A portion of Defendant's testimony from the 24-25 July 2013 hearing was not recorded, apparently due to malfunctioning equipment. Plaintiff included an "Addendum Narrative to Transcript" in the record, purporting

to accurately reflect the content of Defendant's missing testimony. However, when Plaintiff sent the proposed record to Defendant, Defendant objected to some of the content of Plaintiff's narrative, and requested changes. Plaintiff did not respond, and filed the record without including Defendant's proposed narration in the record. Plaintiff failed to properly settle the record on appeal. Rule 11 of the North Carolina Rules of Appellate Procedure mandates settlement of the record by agreement or by certain other approved means. When an appellee objects to a proposed narration, as is the case in this instance, the appellant and appellee must first attempt to reach mutual agreement and, then, if mutual agreement is not reached, pursue other means of settling the record. N.C.R. App. P. 11(c) (2014). Plaintiff did not respond to Defendant's objections and thus made no effort to reach an agreement on the narration. Instead, Plaintiff filed the record, certifying that the record on appeal was settled, when, in fact, it had not been settled. Failure to properly settle the record is a violation of Rule 9 of the North Carolina Rules of Appellate Procedure. N.C.R. App. P. 9; *Higgins v. Town of China Grove*, 102 N.C. App. 570, 572, 402 S.E.2d 885, 886 (1991).

Plaintiff states in his "Settlement of Record:" "[Defendant] requested 'additions' to the narrative be added to

the Record on Appeal, which is objected to by [Plaintiff], and pursuant to Rule 11 those additions are not included in the printed record on appeal." However, Plaintiff cites to no portion of Rule 11 supporting his decision, and we can find none. It was Plaintiff's duty, as Appellant, to insure that the record was complete and settled. *Hill v. Hill*, 173 N.C. App. 309, 322, 622 S.E.2d 503, 512 (2005) (citation omitted). Violations of Rules 9 and 11 of the North Carolina Rules of Appellate Procedure can lead to serious sanctions. *Higgins*, 102 N.C. App. at 572, 402 S.E.2d at 886. We grant Defendant's motion to strike the contested portions of Plaintiff's narrative.

## I.

We first consider whether the relevant findings of fact are supported by substantial evidence and whether those findings support the trial court's conclusion that there had been a substantial change in circumstances that affected the welfare of the children, and that modification of the custody order was in the children's best interests. The trial court found that the children needed to have a "more predictable and consistent schedule" and a schedule that "compliment[ed] their school hours and that requires a change to the custody agreement." Because we find, at the time the trial court entered its order, that the

children's schedule was predictable and consistent and complimented the children's school hours and, because the modified schedule did not increase predictability or consistency in relation to the children's school hours or otherwise, we reverse.

## II.

Plaintiff first argues that several of the trial court's findings of fact are not supported by substantial evidence. We agree in part.

"When reviewing a trial court's decision to grant or deny a motion for the modification of an existing child custody order, the appellate courts must examine the trial court's findings of fact to determine whether they are supported by substantial evidence." *Shipman v. Shipman*, 357 N.C 471, 474, 586 S.E.2d 250, 253 (2003) (citation omitted). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *McConnell v. McConnell*, 151 N.C. App. 622, 626, 566 S.E.2d 801, 804 (2002) (citation omitted). "'In a custody proceeding, the trial court's findings of fact are conclusive on appeal if there is evidence to support them, even though the evidence might sustain findings to the contrary.'" *Senner v. Senner*, 161 N.C. App. 78, 83, 587 S.E.2d 675, 678 (2003) (citations omitted).

In the present case, the trial court made the following relevant findings of fact:

8. Since the entry of the May 23, 2011 Divorce Judgment which incorporated the parties' separation agreement, there have been substantial and material changes in circumstances as follows:

a. That [Plaintiff and Defendant] did not follow the separation agreement and [Plaintiff] would allow [Defendant] to pick the . . . children up from school.

. . . .

d. That the visitation schedule was extremely fluid at times and resulted in inconsistent visitation for the children by both [Plaintiff and Defendant].

e. It is in the children's best interests to have a more predictable and consistent schedule. When the children were younger, they benefited from the flexibility contemplated by the initial agreement and practiced initially. The families had more in common and therefore the flexibility worked better.

. . . .

g. The children are now school age and in need of a schedule which compliments their school hours and that requires a change to the custody agreement.

h. Both [Plaintiff and Defendant] agree, and the [c]ourt finds, because of the children's age, it is important to have a consistent schedule and routine.

i. [Plaintiff] has re-married and separated himself from the original

faith of his family, [Defendant's] family and the children's history. [Plaintiff's] decision to explore a different faith community has changed the nature of events (both family and religious) in which the children can participate.

j. [Plaintiff has made medical decisions without consulting [Defendant]. This has directly affected the children in that they are now vaccinated against [Defendant's] wishes.

k. The children are confused because of the differences in the homes and the rules that have been put in place to respect [Plaintiff's and Defendant's] choices. These constraints have altered visitation with extended relatives and that change has affected the children.

l. The lack of a consistent routine has caused confusion for the children as to when they can see their parents.

m. One [child's] concerns may have manifested itself as digestive and intestinal issues.

n. The children have experienced confusion over the development of one parent staying in the religion in which [the children] were raised and the other parent changing his belief system.

. . . .

s. Even though at separation, [Defendant's] contact was restricted by her own actions, by the date of the divorce, [Plaintiff and Defendant] were sharing the children on a more regular and weekly basis. [Plaintiff's] changing of his faith and the Spring Break incident in April 2012, resulted

in [Plaintiff] relying on the custody order in place which stated that [Defendant] have the children every other weekend.

t. [Plaintiff and Defendant] were in agreement to raise the . . . children as Jehovah's Witnesses during the[ir] marriage and after the[ir] separation. Even after [Plaintiff] first became engaged in September, 2011, he still allowed the . . . children to attend the Kingdom Hall of Jehovah's Witnesses with [Defendant], regardless of whose scheduled time it was on.

u. [Plaintiff] changed the religious upbringing of the . . . children in the fall of 2011, and decided that the children would not attend their Kingdom Hall of Jehovah's Witnesses with [Defendant] or the grandparents during [Plaintiff's] custodial time.

. . . .

9. The foregoing substantial and material changes in circumstances which have affected the welfare of the children warrant this [c]ourt to modify the May 23, 2012 Judgment by awarding joint physical and legal custody of the . . . children to Defendant and Plaintiff.

We first note that the trial court's finding of fact number nine is actually a conclusion of law, and we must treat it as such. *In re R.A.H.*, 182 N.C. App. 52, 60, 641 S.E.2d 404, 409 (2007) (citations omitted). Also, finding of fact number eight: "Since the entry of the May 23, 2011 Divorce Judgment which incorporated the parties' separation agreement, there have been

substantial and material changes in circumstances[,]" when considered in its entirety, is a conclusion of law. To the extent the trial court made determinations that certain findings of fact constituted bases for ruling there had been substantial and material changes in circumstances, those determinations were conclusions of law. The individual alphabetized subsections of finding of fact number eight, except as indicated below, represent the trial court's relevant findings of fact.

Plaintiff contests finding of fact 8.a., which states: "That [Plaintiff and Defendant] did not follow the separation agreement and [Plaintiff] would allow [Defendant] to pick the . . . children up from school." When determining the evidentiary basis for this finding, the agreement must be considered in its entirety. While the agreement stated that Defendant was entitled to visitation with the children every other weekend, and exchanges of the children should occur at Plaintiff's residence, the agreement also stated that "[s]uch other arrangements [as] [were] mutually agreeable to [Plaintiff and Defendant]" would be allowed. Therefore, Plaintiff and Defendant did, in fact, follow the agreement when they made mutually agreeable deviations from the agreement. Thus, this portion of the finding is not supported by substantial evidence. However, the portion stating that: "[Plaintiff] would allow

[Defendant] to pick the . . . children up from school[,]" is supported by substantial evidence.

Plaintiff next challenges the trial court's finding of fact 8.d., which states: "That the visitation schedule was extremely fluid at times and resulted in inconsistent visitation for the children by both [Plaintiff and Defendant]." We agree the visitation schedule was at times "fluid," but disagree with the characterization of the schedule as "extremely fluid." The visitation schedule had been in place since October 2011, but the testimony at trial focused primarily on the visitation schedule following Plaintiff's and Defendant's divorce. At the time of the divorce, Plaintiff was in school — from mid-February until mid-June — and Defendant sometimes provided daytime care for Aurora, as well as afterschool care for both children. During that time, Defendant had a small residence and did not have overnight visits with the children every other weekend as scheduled. Defendant's career as a wedding photographer, which often required her to work on weekends, also made it difficult for her to visit the children on weekends. This inconsistent visitation continued through the summer of 2011. In an attempt to have Defendant visit more consistently with the children, and be more of a presence in the children's lives, Plaintiff and Defendant mutually agreed to modify the schedule, allowing

Defendant custody of the children every Thursday and Friday night.

The evidence does not support the finding that the "visitation schedule was extremely fluid at times and resulted in inconsistent visitation for the children by both [Plaintiff and Defendant]." There was no evidence Plaintiff had ever been inconsistent in his visitation, and Defendant's inconsistent visitation was not a result of the schedule – had Defendant wanted to keep the children every other weekend as was agreed upon in the schedule, she had that opportunity. Rather, because of the flexibility permitted in the agreement, Defendant and Plaintiff mutually agreed for Defendant to have visitation every Thursday and Friday, thereby increasing the time Defendant spent with the children, and increasing consistency since Defendant had not been taking advantage of all of her scheduled visitation with the every other weekend schedule.

In April 2012, Plaintiff and Defendant resumed the original every other weekend schedule set out in the agreement, and Defendant maintained a consistent visitation schedule. There was no evidence, after that time, that Defendant's career continued to prevent her from seeing the children on weekends. Therefore, although the visitation schedule was "fluid" at times to accommodate Defendant's schedule, it resulted in a more

consistent and more frequent visitation schedule for Defendant. Furthermore, since April 2012, the visitation schedule has been entirely consistent: Defendant has physical custody of the children every other weekend, as Plaintiff and Defendant had initially agreed in the agreement.

Plaintiff next challenges finding of fact 8.e., which states: "It is in the children's best interests to have a more predictable and consistent schedule. When the children were younger, they benefited from the flexibility contemplated by the initial agreement and practiced initially. The families had more in common and therefore the flexibility worked better." We note that any ultimate finding that considered what was in the best interests of the children was a conclusion of law and not a finding of fact. *R.A.H.*, 182 N.C. App. at 60, 641 S.E.2d at 409. We hold that there is substantial evidence to support the rest of this finding of fact.

Plaintiff next challenges finding of fact 8.g., which states: "The children are now school age and in need of a schedule which compliments their school hours and that requires a change to the custody agreement." The portion of this finding stating that the children are now of school age and in need of a schedule complimenting their school hours is a reasonable statement, though we are uncertain what evidence was presented

to the trial court in support of this finding. Furthermore, one of the children was already attending school at the time of the divorce. The portion of this finding stating that the children's status as school-age children requires a change to the agreement is a conclusion of law.

Plaintiff also contests finding of fact 8.l., which states: "The lack of a consistent routine has caused confusion for the children as to when they can see their parents." It is unclear from the evidence before the trial court what the basis was for this finding of fact. However, it is clear the children were in a very consistent routine, as originally agreed to by Plaintiff and Defendant, from April 2012 until the 24-25 July 2013 hearing.

Finally, Plaintiff challenges finding of fact 8.m., which states: "One [child's] concerns may have manifested itself as digestive and intestinal issues." We hold there was not substantial evidence that the agreement, as it was originally written, caused a digestive or intestinal issue that the child may have suffered. In any event, a finding that these issues "may" have been connected to the child's "concerns" is speculative only.

We consider the above findings of fact that we have determined are supported by substantial evidence, along with the

unchallenged findings of fact, in our analysis below.

### III.

In Plaintiff's second argument, he contends the trial court erred in finding "that there had been a substantial and material change in circumstances since the entry of the prior order of May 23, 2011[.]" We agree.

"'[T]he modification of a custody decree must be supported by findings of fact based on competent evidence that there has been a substantial change of circumstances affecting the welfare of the child, and the party moving for such modification assumes the burden of showing such change of circumstances.'" *Pulliam v. Smith*, 348 N.C. 616, 618-19, 501 S.E.2d 898, 899 (1998) (citation omitted).

> [C]ourts must consider and weigh all evidence of changed circumstances which affect or will affect the best interests of the child, both changed circumstances which will have salutary effects upon the child and those which will have adverse effects upon the child. In appropriate cases, either may support a modification of custody on the ground of a change in circumstances.

*Id.* at 619, 501 S.E.2d at 899.

Defendant, as the moving party, had the burden of showing there had been a substantial change affecting the welfare of the children. Defendant has not met this burden. Reviewing the relevant findings of fact that are supported by substantial

evidence, the trial court's conclusion that there was a substantial change in circumstances is based upon the following. First, the trial court seems to have primarily relied on its findings and conclusion that the schedule had been "fluid" and that the children now needed a more predictable and consistent schedule. The extent to which the schedule had been "fluid" in the past was because of Defendant's initial lack of participation in the children's lives, and then because Plaintiff decided to accommodate Defendant's schedule to allow more predictable and consistent visitation between Defendant and the children. While Defendant's access to the children decreased in April 2012 because of the return to the express terms of the agreement, the schedule since April 2012 has been more predictable and more consistent from the standpoint of the children.

Second, the trial court found that Plaintiff's marriage and his separation from the Jehovah's Witness faith "has changed the nature of events (both family and religious) in which the children can participate." There is no evidence to support the finding that Plaintiff's marriage affected, or will negatively affect, the welfare of the children. Since Plaintiff's marriage, his wife has become involved with the children and attends parent-teacher conferences. Plaintiff's marriage was

not a substantial change that has affected the welfare of the children. The trial court found that Plaintiff's change of religion caused confusion in the children "because of the differences in the homes and the rules that ha[d] been put in place to respect both [Plaintiff's and Defendant's] choices." According to the trial court, this impacted the children's relationships with their grandparents, "and that change has affected the children[,]" but has not indicated how confusion on the part of the children has negatively impacted the children, nor how the change in relationship with their grandparents "has affected" them. Defendant agreed at the 24-25 July 2013 hearing that she and Plaintiff had worked out the issues surrounding Plaintiff's change of faith and how to handle that change with respect to the children.

Finally, in finding of fact 8.j., the trial court found: "[Plaintiff] has made medical decisions without consulting [Defendant]. This has directly affected the children in that they are now vaccinated against [Defendant's] wishes." This finding is supported by substantial evidence; however, there is no indication or finding that vaccinating the children negatively impacted the children.

The relevant findings of fact supported by the evidence do not support a conclusion that there has been "'a substantial

change of circumstances[.]'" *Pulliam*, 348 N.C. at 618-19, 501 S.E.2d at 899 (citation omitted). Because the findings of fact do not support the conclusion that there has been a substantial change of circumstances, we reverse and remand to the trial court for action consistent with this opinion.

IV.

Plaintiff also argues that Defendant failed to prove a connection between the alleged substantial change in circumstances and the welfare of the children, and that the trial court's findings and conclusions do not support its ruling. We agree. "[B]efore a child custody order may be modified, the evidence must demonstrate a connection between the substantial change in circumstances and the welfare of the child[.]" *Shipman*, 357 N.C. at 478, 586 S.E.2d at 255.

Even assuming, *arguendo*, there has been a substantial change in circumstances, the trial court has not indicated how any such change has affected the welfare of the children. The trial court's primary basis for modifying the schedule — greater predictability and consistency — has not been improved by the modification since the children's schedule, as provided in the agreement, is clearly predictable and consistent: Defendant has physical custody every other weekend. As indicated above, there are no findings that Plaintiff's marriage, his change of faith,

or his decision to vaccinate the children, had an adverse impact on the welfare of the children. Because the findings of fact do not support a conclusion that any alleged substantial change in circumstances has affected the welfare of the children, we reverse and remand on this basis, as well. Though it is conceivable that the positive advances Defendant has made in parenting, and her increased involvement in the children's lives, could lead to a conclusion supporting a modified schedule to provide Defendant more time with the children, that is not the basis alleged by Defendant for the custody modification order before us.

For the reasons stated above, we find that the trial court erred in concluding there was a substantial change in circumstances affecting the welfare of the children that warranted modification of the prior child custody agreement.

Reversed and remanded.

Judges HUNTER, Robert C. and ELMORE concur.

Report per Rule 30(e).