IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 25-343

Filed 18 March 2026

Vance County, Nos. 21JA000004-900, 21JA000005-900, 21JA000006-900, 24CV003244-900

IN THE MATTER OF:

S.H., S.H., T.H.

Appeal by Respondent-Mother from orders entered 19 December 2024 by Judge Adam S. Keith in Vance County District Court.[1] Heard in the Court of Appeals 29 January 2026.

> *Tiffanie C. Meyers, for petitioner-appellee Vance County Department of Social Services.*
>
> *Rebekah W. Davis, for respondent-appellant mother.*
>
> *Q Byrd Law, by Quintin D. Byrd, for appellee guardian ad litem.*
>
> *No brief filed for respondent-appellee father.*

FLOOD, Judge.

Respondent-Mother appeals from the trial court's permanency planning order and permanent custody order awarding sole legal and primary physical custody of three of her minor children, Steve, Sam, and Theo,[2] to Respondent-Father. Mother

---

[1] The case caption for the order in the civil case reflects the parties as follows: Jamon Hargrove, Sr., Plaintiff, v. Shannon Hargrove, Defendant.

[2] We use pseudonyms to protect the identity of the minor children. *See* N.C. R. App. P. 42.

- 1 -

argues that the trial court's custody and visitation determinations are unsupported by the findings and evidence and contrary to the children's best interest. For the following reasons, we affirm both orders in full.

## I. **Factual and Procedural Background**

Mother and Father are the biological parents of Steve, Sam, and Theo, who are the subjects of this appeal. Mother and Father are also the biological parents of John, who is in foster care. Mother has two other children in foster care, Zack and Sean, by different fathers. Mother and Father separated and live in different residences.

In May 2020, the Vance County Department of Social Services ("DSS") received a neglect report alleging Theo was improperly supervised and lived in an injurious environment. The report specifically alleged that Theo was hospitalized after being hit by a car "while wandering the streets[,]" and that both Mother and Father were intoxicated when Theo was hit. At the time, Steve, Sam, and Theo were living with Mother and her three other children. Mother entered into a family services agreement with DSS in July 2020, and Father entered into a services agreement with DSS in September 2020. After October 2020, neither Mother nor Father were in compliance with their services agreements.

DSS received a second neglect report in October 2020 alleging that Mother and Father failed to manage the children's medication. While investigating the second report, DSS discovered that the children had excessive absences from school, Zack

and Sean were not being treated for their mental illnesses,[3] referrals for Theo to be evaluated for cardiac disease had gone ignored, and a referral for Sam to be evaluated for hearing loss had likewise gone ignored. During a home visit in December 2020, a DSS social worker discovered that Mother had been evicted from her residence, and that Steve, Sam, Theo, and John had gone to live with Father. Mother, Zack, and Sean were living in and out of hotels and with relatives.

Because neither parent had made sufficient progress on their case plan, DSS filed juvenile petitions on 9 February 2021 alleging Steve, Sam, and Theo were neglected juveniles. On 7 July 2022, the trial court adjudicated all three children neglected, and they were placed in foster care. In February 2023, the trial court entered disposition orders; it adopted a primary plan of reunification for all three children and ordered Mother and Father to comply with their case plans. The trial court granted Mother unsupervised visits and Father supervised visits.

In May 2023, the subject children began a trial home placement with Mother. Father was granted alternating weekend visits. Both Mother and Father were making progress on their case plans. During the trial home placement, Mother engaged DSS in identifying potential summer programs and schools for the children and ensured that the children attended school and were clothed and fed. Mother lost her housing in July 2023, however, and the children returned to foster care.

---

[3] Zack and Sean suffer from mental illnesses that have resulted in their involuntary commitment on several occasions and requires treatment and medication management.

In November 2023, the children began a trial home placement with Father. Father has been diagnosed with multiple sclerosis and resides with his grandmother, who helps care for the children. DSS initially expressed concerns about Father's resistance to therapy for the children and himself, the children's uncle physically disciplining the children, and Father's drug use. After monitoring the situation, DSS deemed the placement appropriate.

In March 2024, Mother obtained stable housing. John and Zack began a trial home placement with her in June 2024. Mother was subsequently granted weekend overnight visits with Steve, Sam, and Theo. Both John and Zack have behavioral issues and had expressed feelings of being unwanted and left out of their parents' lives. DSS was concerned that adding Steve, Sam, and Theo to Mother's household permanently would disrupt the dynamic as the other children adjusted. Steve, Sam, and Theo have expressed that they do love Father but would prefer to live with Mother or return to their previous foster home until they can live with Mother.

In July 2024, after Steve, Sam, and Theo had been in Father's home for approximately eight months, the trial court held a permanency planning hearing for Steve, Sam, and Theo as well as John and Zack. At the hearing, DSS did not make a recommendation as to whether the permanent plan for Steve, Sam, and Theo should remain with Father or be placed with Mother. Instead, DSS asked the trial court to determine what would be in the best interest of each child. The trial court entered a permanency planning order on 19 December 2024, giving Father custody of the three

children and Mother visitation every other weekend from Friday at six p.m. to Sunday at six p.m. The trial court terminated its juvenile jurisdiction, ordered the matter closed with no future hearings scheduled, and ordered a Chapter 50 custody order to be entered.

Also on that date, the trial court entered a Chapter 50 custody order. The facts supporting the custody order were incorporated from the permanency planning order, and the custody order awarded sole legal custody and primary physical custody of the children to Father. The trial court awarded Mother secondary physical custody with visitation every other weekend from Friday at six p.m. to Sunday at six p.m. and "additional custodial periods" from "time to time" that the parties mutually agreed upon.

Mother timely appealed.

## II. <u>Analysis</u>

On appeal, Mother argues that the trial court abused its discretion with respect to (A) the custody order and (B) the visitation order. For the reasons elaborated upon below, Mother has failed to show an abuse of discretion in either order.

### A. Legal and Physical Custody

Mother first argues that the trial court's custody determination[4] is not

---

[4] Although Mother challenges the trial court's custody determination in both the permanency planning order and the permanent custody order, she does not challenge the trial court's decision to terminate the juvenile proceedings and initiate a civil custody action. Accordingly, the operative order on appeal is the permanent custody order.

supported by its findings of fact and is contrary to the children's best interest.

An appellate court reviews a civil custody order to determine "whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts." *Burger v. Smith*, 243 N.C. App. 233, 236 (2015) (citation omitted). "[T]he trial court's findings of fact are conclusive on appeal if supported by substantial evidence, even if there is sufficient evidence to support contrary findings." *Id.* (citation omitted). "Unchallenged findings of fact are binding on appeal." *Id.* (citation omitted).

"N.C.[G.S.] § 7B-911 specifically provides the procedure for transferring a Chapter 7B juvenile proceeding to a Chapter 50 civil action." *McMillan v. McMillan*, 267 N.C. App. 537, 543 (2019) (citation omitted). When entering a civil custody order under section 7B-911, the trial court must "[m]ake findings and conclusions that support the entry of a custody order in an action under Chapter 50 of the General Statutes[.]" N.C.G.S. § 7B-911(c)(1) (2023).

Relevant here, N.C.G.S. § 50-13.2(a) states that a trial court "shall award [custody] to such person, agency, organization or institution as will best promote the interest and welfare of the child." N.C.G.S. § 50-13.2(a) (2023). "In making the [best interest] determination, the court shall consider all relevant factors including acts of domestic violence between the parties, the safety of the child, and the safety of either party from domestic violence by the other party." *Id.*

The trial court explicitly incorporated the findings of fact from the December

2024 permanency planning order and specifically found that Father "is a fit and proper person to have custody of the minor children" and that "[i]t is in the best interest of the minor children" that Father have custody.

Mother argues that the trial court's custody determination is not supported by competent evidence due to inaccuracies in the following four findings of fact:

> 9. The schools report that each of the juveniles [is] doing well in school.
>
> 10. There have been recent issues with [Theo] at school. [] Father called [] Mother to seek her assistance by requesting that she sit in the classroom to determine what was going on with the juvenile. [] Mother advised him that she would not sit in the classroom as it was his responsibility since the juveniles were placed in his home.
>
> . . . .
>
> 13. [Mother] has a three (3) bedroom home that she shares with her older daughter and grandson, two older sons, and her three-year-old son.
>
> . . . .
>
> 30. [Steve] also had an issue with his finger. [] [M]other took him [to] the ER[,] where he received antibiotics. [] [M]other did not advise [F]ather of the ER visit.

The trial court's unchallenged findings of fact, however, include the following:

> 16. [] Father has been in a trial home placement with each of the juveniles since November 13, 2023 and is supported by his grandmother . . . and other family members.
>
> . . . .
>
> 23. [Father's grandmother] is able and willing to continue to support [Father] in caring for the children.

24. The department also has concerns with [Mother].

25. The older two children, [Zack and John,] had expressed that they felt left out of this process because they had not had the opportunity to return home. The department wanted to allow [Mother] to focus on them.

26. The department continues to have concerns about [Mother's] ability to manage her children's behaviors if they were to become extreme and her unstable employment history.

. . . .

31. Conversations with each child indicate[] that they do love their father but would prefer to live with their mother or return to their previous foster home until they can live with their mother.

. . . .

35. The juvenile[s] ha[ve] been in a trial home placement [with Father] for thirteen (13) months. The trial home placement is meeting the needs of each of the juveniles.

. . . .

38. There is not a need for continued State intervention on behalf of each of the juveniles through [] juvenile court proceeding[s].

39. . . . . The placement is stable, and continuation of the placement is in each of the juvenile[s'] best interest.

The trial court's unchallenged findings of fact are deemed supported by competent evidence, *see Burger*, 243 N.C. App. at 236, and consider the relevant factors in making a best interest determination under N.C.G.S. § 50-13.2(a). Disregarding the challenged findings of fact, the trial court's remaining findings

demonstrate its consideration of all relevant factors and provide sufficient support for its custody determination.

## B. Visitation

Mother next argues that the custody order's visitation schedule is not supported by the findings or evidence and is contrary to the children's best interest. Specifically, Mother argues the trial court's factfinding was internally conflicting because it found Mother was a fit and proper parent with mutual love for the children, yet it only allowed Mother weekend visitation without the guarantee of holiday visitation. She also argues the household decision-making power of Father's grandmother rendered the visitation scheme outside of the children's best interest; argues the children had a good relationship with her and her family; and emphasizes DSS's reservations regarding placing the children with Father. In essence, Mother challenges the order on the basis that the trial court improperly weighed the interests at play in its ultimate determination.

"Any order for custody shall include such terms, including visitation, as will best promote the interest and welfare of the child." N.C.G.S. § 50-13.2(b) (2023). "Although the trial judge is not required to find all the facts shown by the evidence, the judge must find at least enough material facts to support the judgment." *Lamond v. Mahoney*, 159 N.C. App. 400, 407 (2003) (citation modified). "A trial court's order regarding visitation rights is reviewed for an abuse of discretion." *In re R.J.P.*, 284 N.C. App. 53, 60 (2022) (citations omitted). Although the court has broad discretion

in selecting an appropriate visitation arrangement, the exercise of the discretion must be supported by findings of fact and evidence along with conclusions of law. *Lamond*, 159 N.C. App. at 407–08.

Here, in arguing the visitation order reflected an abuse of discretion, Mother points us to *In re Custody of Stancil*, a case in which we held that the total delegation of visitation by a parent to the whims of the child's primary custodian is impermissible, constituting a *per se* abuse of discretion. 10 N.C. App. 545, 551–52 (1971). In *Stancil*, we partially vacated the trial court's order and remanded with directions for a clearer visitation schedule where the order delegated visitation with the child's mother entirely to the discretion of the child's primary custodian, the child's grandmother. *Id*. at 553. We did so on the basis that the visitation of a child by a parent is a natural right that must be safeguarded by judicial oversight:

> [A] parent's right of visitation with his or her child is a natural and legal right and that when awarding custody of a child to another, the court should not deny a parent's right of visitation at appropriate times unless the parent has by conduct forfeited the right or unless the exercise of the right would be detrimental to the best interest and welfare of the child. The court should not assign the granting of this privilege of visitation to the discretion of the party awarded custody of the child.
>
> When the custody of a child is awarded by the court, it is the exercise of a judicial function. In like manner, when visitation rights are awarded, it is the exercise of a judicial function. We do not think that the exercise of this judicial function may be properly delegated by the court to the custodian of the child. Usually those who are involved in a controversy over the custody of a child have been unable to

- 10 -

come to a satisfactory mutual agreement concerning custody and visitation rights. To give the custodian of the child authority to decide when, where and under what circumstances a parent may visit his or her child could result in a complete denial of the right and in any event would be delegating a judicial function to the custodian.

*Id.* at 551–52 (internal citation omitted).

*Stancil* is distinguishable from this case, however. The order in this case, unlike the order in *Stancil*, *did* provide for specific, regular visitation periods—namely, from Fridays at 6:00 p.m. to Sundays at 6:00 p.m. every other weekend—and did not entirely delegate the function of creating a visitation schedule to the primary custodian. Thus, while the visitation schedule in this case may have contemplated some degree of supplemental visitation pursuant to the consent and coordination of the parties, it did not delegate visitation in the manner we held to constitute *per se* abuse of discretion in *Stancil*—namely, wholly delegating all visitation rights to the primary custodian. Accordingly, *Stancil* does not control our holding in this case.

Recognizing *Stancil* as inapposite, we further hold that the trial court's balancing of interests, while perhaps not *favorable* to Mother, reflected an appropriate exercise of discretion as contemplated by the trial court's ordinary role in our custody and visitation scheme. Without further argumentation from Mother as to other ways in which the trial court may have abused its discretion, the visitation order—while perhaps lacking some detail common to other orders of its type—reflected a reasoned exercise of discretion as to the best interest determination

naturally predicate to its findings of fact and other conclusions of law. *See Peters v. Pennington*, 210 N.C. App. 1, 12 (2011) ("[W]e ascertain (1) whether the challenged findings of fact are supported by substantial evidence; (2) whether the trial court's findings of fact support its conclusions of law; and (3) whether the trial court abused its discretion in fashioning the custody and visitation order."). Thus, based on the arguments before us, the trial court also did not abuse its discretion with respect to the visitation order.

### III. <u>Conclusion</u>

As we have no basis to believe the trial court abused its discretion in either the custody or visitation orders, either on a fact-specific or *per se* basis, we affirm the trial court in full.

AFFIRMED.

Judge MURRY concurs.

Judge COLLINS concurs in part and dissents in part in separate opinion.

COLLINS, Judge, concurring in part and dissenting in part.

I concur with the majority's conclusion that the trial court's legal and physical custody determination is supported. But because I believe the custody order's visitation schedule is not supported by the findings or evidence and is contrary to the children's best interests, I respectfully dissent from that portion of the majority's opinion.

"Any order for custody shall include such terms, including visitation, as will best promote the interest and welfare of the child." N.C. Gen. Stat. § 50-13.2(b) (2024). "Although the trial judge is not required to find all the facts shown by the evidence, the judge must find at least enough material facts to support the judgment." *Lamond v. Mahoney*, 159 N.C. App. 400, 407 (2003) (cleaned up).

> [A] parent's right of visitation with his or her child is a natural and legal right and that when awarding custody of a child to another, the court should not deny a parent's right of visitation at appropriate times unless the parent has by conduct forfeited the right or unless the exercise of the right would be detrimental to the best interest and welfare of the child. The court should not assign the granting of this privilege of visitation to the discretion of the party awarded custody of the child.

*In re Custody of Stancil*, 10 N.C. App. 545, 551-52 (1971). Although the court has broad discretion in selecting an appropriate visitation arrangement, the exercise of the discretion must be supported by findings of fact and evidence along with

conclusions of law. *Lamond*, 159 N.C. App. at 407-08.

The trial court incorporated the findings of fact from the December 2024 permanency planning order into its custody order. It specifically found that Mother "is a fit and proper person to have [] visitation" of the children, and that visitation as set forth in the order "is in the best interest of the children." The trial court awarded Mother "secondary [physical] custody of the minor children every other weekend from Friday at 6:00p[.]m[.] until Sunday at 6:00p.m." and provided that "from time to time" the parties may "agree to additional custodial periods for [Mother] with the minor children." The trial court made no provisions for holidays or vacations.

At the conclusion of the permanency planning hearing, which reviewed the permanent plan for Steve, Sam, and Theo, as well as for John and Zack, the trial court announced that Mother should have "reasonable visitation." After some discussion with the attorneys about what the current visitation schedule was, and determining that more structure was needed, the trial court announced "[t]hat the minor children shall be on an every-other-weekend schedule with []Mother." The trial court then noted its concern that Mother did not have a driver's license and ordered her to arrange transportation for the children with a licensed driver. The trial court also ordered that the children not be around individuals using illegal substances.

Mother's attorney and the trial court then clarified that this visitation schedule was only temporary:

> [MOTHER'S COUNSEL]: . . . . Now, is this just -- this is for a permanency planning order. We're going to have a review date.
>
> Is that my understanding?
>
> THE COURT: Oh, yeah. Absolutely.
>
> [MOTHER'S COUNSEL]: Okay.
>
> THE COURT: Yeah. We will need a review date for this matter. Because it's permanency planning, though, that can be within a few months. Let's see. I will be back in February. Let's set it for the second session of February.

Thereafter, a good deal of confusion ensued about whether there would be a future hearing as to all five children, or just the two older children; whether the guardian ad litem could be released from the case as to any or all of the children; and what the next steps were. The guardian ad litem's attorney asked, "So -- or is it § 7B-911, or is it just a permanency plan and we're going that route? Because that would be a different set of reviews and so forth."

After more discussion, the guardian ad litem's attorney asked, "So we are § 7B-911?" The trial court responded, "U[h]-huh. Yes. . . . Chapter 50 as to the younger three." More discussion ensued and apologies were made for the confusion. At the very conclusion of the hearing, Mother's attorney asked if it could be included in the order that the parties could agree on extra time. The trial court stated that "there's nothing to stop any further consideration for visitation between the parties."

The trial court's permanency planning order terminated its juvenile jurisdiction, ordered the matter closed with no future hearings scheduled, and

ordered a Chapter 50 custody order to be entered.

It is apparent from the transcript that the trial court announced its visitation schedule as a permanency planning order to be reviewed "within a few months" under a best interests of the child standard. *See* N.C. Gen. Stat. § 7B-905.1 (2024). It did not announce a permanent visitation schedule with no scheduled review date that could be modified only as a result of a substantial change of circumstances. *See* N.C. Gen. Stat. § 50-13.7(a) (2024); *Shipman v. Shipman*, 357 N.C. 471, 473 (2003). Furthermore, the trial court's findings of fact do not support the permanent visitation schedule that fails to address holidays and vacation.

I would thus vacate the trial court's permanent custody order as to visitation and remand the matter to the trial court for a revised visitation schedule or for further findings of fact that support the schedule imposed.